CHARLES H. FAIRER, Trustee of the Estate of K. Tomi-
shima, a Bankrupt, *v.* H. HACKFELD & CO., Limited.

APPEAL FROM CIRCUIT JUDGE, FOURTH CIRCUIT.

SUBMITTED MARCH 6, 1902.          DECIDED MAY 15, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Under the Bankruptcy Act of 1898 (30 U. S. Stat. at L. 544) it is one
of the essentials of a voidable preference that the person receiving
it or his agent shall, at the time of its receipt, have had reasonable
cause to believe that it was intended thereby to give a preference
and this necessarily includes reasonable cause to believe that the
debtor was at the time insolvent.

Upon the evidence in this case, held that it is not satisfactorily shown
that the alleged preferred creditor had at the time of the transfer,
reasonable cause to believe that the debtor was insolvent.

OPINION OF THE COURT BY PERRY, J.

This is a bill in equity brought by a trustee in bankruptcy
against a creditor, praying that three certain transfers of prop-
erty to the creditor be declared void, on the ground that such
transfers were voidable preferences within the meaning of the
bankruptcy Act of 1898.

One Tomishima, a resident of Olaa, Hawaii, was on the peti-
tion of certain creditors filed March 11, 1901, adjudged a bank-
rupt on June 3, 1901. Tomishima had conducted a retail mer-
chandise store at Olaa and similar stores at one or two other
places on Hawaii and was also engaged as a contractor in clear-
ing land for planters and building railroads. He had dealt
with Hackfeld & Co., the respondent, purchasing considerable

14-D

quantities of goods, most of which were for his Olaa store. He kept a running account with the respondent, from time to time paying to it substantial sums of money. Credit had been freely extended to him by the corporation. On December 4, 1900, the sum of $9,421.06 being then due, Tomishima executed to Hackfeld & Co., at its request, a promissory note payable December 31, 1900, for that amount and also a mortgage to secure payment thereof, the property covered by the mortgage being the stock of goods and the building at Olaa, certain leaseholds and buildings at Waiakea, twelve horses, four mules and certain wagons. Other property of his, to wit, promissory notes of the face value in all of $2,000, the stock of goods in the store at Waiakea, a note for $1,000 secured by a mortgage, a building on the Shipman tract at Olaa and an interest in certain cane growing contracts, was not included in the mortgage. Thereafter, and until the middle of December, the corporation sold to him goods on credit to the amount of $686.59, an understanding being first had with Tomishima that he should pay cash for all rice purchased by him. About the middle of December, Tomishima having failed to keep his agreement as to the cash payments, Hackfeld & Co. declined to sell to him any more goods on credit. On December 30, 1900, he assigned to the respondent, as further security for the debt, a certain promissory note for $1,000 due him by others and also a mortgage of growing crops given him to secure its payment. On or about January 26, 1901, Hackfeld & Co.'s agent, hearing that Tomishima was selling goods at Olaa at very low rates, investigated the matter and found that the stock of goods had been very greatly diminished and for the company's protection took possession, foreclosed the mortgage and later sold the mortgaged property at auction, realizing therefrom the sum of $2,116.24, net proceeds, which sum the respondent still holds. On March 21, 1901, Hackfeld & Co. received from one McStocker, as guarantor on Tomishima's note of December 4, 1900, the sum of $394.72, that being the extent of McStocker's guaranty.

The question is whether any one or all of these three trans-

fers were, under the statute, voidable preferences. The Circuit Judge held that they were not and dismissed the bill. The complainant appealed.

What is a preference is defined in section 60 (a) of the Act. "A person shall be deemed to have given a preference, if, being insolvent, he has    *    *    *    made a transfer of any of his property, and the effect of the enforcement of such    *    *    * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." Section 1, subdivision 15, provides that "a person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property    *    *    *    shall not, at a fair valuation, be sufficient in amount to pay his debts." Section 60 (b) also is applicable in this case. It reads: "If a bankrupt shall have given a preference within 4 months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference it shall be voidable by the trustee, and he may recover the property or its value from such person."

Not all preferences, then, are voidable. Those only are in which the following five essential elements exist, namely: (1) a transfer, (2) within four months before the filing of the petition or after the filing of the petition and before the adjudication, (3) insolvency of the debtor, (4) the effect of the transfer must be to enable the creditor to obtain a greater percentage of his debt than any other creditor of the same class, and (5) the creditor to whom the transfer is made must have had reasonable cause to believe that it was intended thereby to give a preference.

Referring first to the execution of the mortgage of December 4, 1900, the facts of the transfer and of its making within the time stated in the statute is admitted. It may be assumed for the purposes of this case that on December 4, 1900, Tomishima was in fact insolvent and that the effect of the transfer was to

enable Hackfeld & Co. to obtain a greater percentage of its debt than any other of the creditors. The fifth element still remains to be considered. Did Hackfeld & Co., or its agents, at the time of the execution of the mortgage, have reasonable cause to believe that Tomishima intended thereby to give a preference? This includes necessarily the question of whether or not at that time they had reasonable cause to believe that Tomishima was insolvent, for insolvency is one of the essentials of a preference. Loveland on Bankruptcy, pp. 467-468. We may say, at this point, that we are satisfied from the evidence that at the time in question the respondent did not know or believe that Tomishima was insolvent.

On the subject of reasonable cause the law is clearly established. "The resultant of all these decisions we take to be this: that the creditor is not to be charged with knowledge of his debtor's financial condition from mere non-payment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvency; that it is not essential that the creditor should have actual knowledge of, or believe in, his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent."—*In re Eggert*, 102 Fed. 742 (1900).

"Creditors have reasonable cause to believe that a debtor, who is a trader, is insolvent when such a state of facts is brought to their notice respecting the affairs and pecuniary condition of the debtor as would lead a prudent business man to the conclusion that he is unable to meet his obligations as they mature in the ordinary course of business," (or, under the Act of 1898, that his assets are not equal in value to the amount of his debts).— *Wager v. Hall*, 16 Wall. 584, 600 (1872).

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency in order to invalidate a security taken for his debt.   *   *   * A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it, and yet such belief as the act requires may be

wanting. Obtaining additional security, or receiving payment of a debt under such circumstances, is not prohibited by the law."—*Grant v. National Bank*, 97 U. S. 81 (1877). It is to be noted that this was even under the Act of 1867, when inability to pay one's debts as they matured constituted insolvency.

For a case under the Act of 1898 see *In re Eggert, supra*, where it was said: "Indeed it may be said that a majority of merchants absolutely solvent, in the sense in which the term is employed in the bankrupt act, are not at all times able to promptly meet their obligations as they mature. To hold that a creditor receiving payment of or security for a past due debt is, by the mere fact of knowledge that the debt is past maturity, put upon inquiry of his debtor's inability to pay all his debts, and that under such circumstances he received payment or security at his peril, would be to put at hazard many business transactions and make the act oppressive." See also *Buchanan v. Smith*, 16 Wall. 277 (1872); *Bank v. Cook*, 95 U. S. 343 (1877).

The evidence shows that the respondent's agents before taking the mortgage inquired of Tomishima concerning his assets and liabilities and that in reply he represented to them that his stock of goods at the Olaa store was of the value of about $14000, that he had other property enumerating the items and their values, aggregating about $6000 more, and that he owed in all, including his debt to Hackfeld & Co., about $12000. Tomishima appeared to be doing a good business at Olaa. A short time prior to the execution of the mortgage Hackfeld's agent had been in the store and had seen the stock of goods though he made no examination of them; he believed, as he testifies, Tomishima's statement as to the value of his stock. Shortly before December 4, 1900, Tomishima's debt to Hackfeld & Co. had been about $12000 and that for goods that had gone almost entirely into the Olaa stock. Moreover Tomishima was interested in cane-growing contracts in which as he represented, he had invested about $2500 and from which he hoped for

future profits, although, as he himself stated, no returns could be expected from that source at the time.

· There was some evidence tending to support the complainant's claim in the suit, as also some evidence other than that already referred to herein tending to support the respondent's contentions. Upon some points, as, for example, the actual value of some of the items of property not included in the mortgage of December 4, 1900, the evidence is not as full and satisfactory as might be desired. Without attempting, however, to review in detail all the circumstances and evidence throwing light for or against the theory of the existence of reasonable cause to believe, we find upon all the evidence that it has not been satisfactorily shown that the respondent or its agents did, on December 4, 1900, have reasonable cause to believe that Tomishima was insolvent. With respect to the assignment of December 30, 1900, our finding is the same. The only additional circumstance that there is on this point is that about the middle of December the respondent had ceased to give credit to Tomishima. That however, as appears from the authorities above quoted, is not inconsistent with the absence of reasonable cause to believe.

As to the payment of $394.72, the evidence is very meagre. It does not appear that this sum was paid upon an order of Tomishima's or that it was a payment of a debt owing by the guarantor to Tomishima or that the guarantor was reimbursed out of the estate of Tomishima or that said estate was diminished because of such payment. The evidence shows merely a guaranty to pay the sum stated. If the payment had not been made the trustee could not, so far as the case presented by the evidence is concerned, obtain that sum of money from the guarantor. The guaranty was in favor of the defendant alone and no one else could take advantage of it. The amount is not recoverable by the trustee. See Lowell on Bkrptcy, Sec. 75, page 59; *Winsor v. Kendall*, 3 Story 507 (20 Fed. Cases, No. 17786).

It is contended by the complainant that the decree appealed from should be reversed for failure of the Circuit Judge to make

specific findings on all the questions of fact argued by counsel in the case. As we understand the decision upon which the decree was based, the judge did find, although he did not express it in these exact words, that the creditor did not have reasonable cause to believe that Tomishima was insolvent at the time of the transfer. In view of that finding, it was unnecessary for the judge below, as, in view of our conclusion on the same point, it is unnecessary for us now, to make findings upon the other branches of the case. Whether or not under other circumstances a decree in equity would be reversed for failure of the Circuit Judge to make specific findings, we need not now say.

The decree appealed from is affirmed.

*Smith & Parsons* for complainant.

*Kinney, Ballou & McClanahan* and *H. A. Bigelow* for respondent.