HIBBERD v. McGILL.

(Circuit Court of Appeals, Third Circuit. February 22, 1904.)

No. 42.

1. BANKRUPTCY—PARTNERSHIP OR INDIVIDUAL DEBT.

An indebtedness contracted by a member of a partnership individually before the partnership was formed cannot be converted into a firm obligation by its entry as such on the books without the creditor's knowledge, or by the making of payments thereon by firm checks, so as to preclude the creditor from proving it against the estate of the individual partner in bankruptcy.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 123 Fed. 187.

J. B. Rettew, for appellant.

Rudolph M. Shick, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. The facts, as disclosed by the record in this case, are as follows:

John Wiseman and George McGill traded together in Philadelphia, as partners under the firm name of Wiseman & McGill, in the wholesale grocery business, for a number of years prior to 1891. In January, 1891, George McGill died. There stood to his credit as capital, on the books of the firm, about $18,000. He left surviving him his widow, this claimant, and one daughter, Anna E. McGill. Dr. George W. Bailey was executor of his will, and one of the trustees for Anna E. McGill. Shortly after George McGill's death, Dr. Bailey, as executor, and acting as attorney in fact for Mrs. McGill and as trustee for Anna E. McGill, made a settlement with Mr. Wiseman, the surviving partner. In that settlement, it was agreed between Mr. Wiseman, the surviving partner, and Dr. Bailey, that $9,000 should be carried to the credit of Mrs. McGill. It was also agreed that Mrs. McGill should be paid $75 per month. This agreement was made prior to March 16, 1891, because on that date, there is a check in evidence, signed "Wiseman & McGill," for the first month's installment (probably the month of February) under that agreement. This sum was regularly paid each month, by checks signed in the same way during several years, and until the firm name was changed to Wiseman & Wallace. There is also in evidence the following receipt:

"Philadelphia, April 1, 1891.

"Received of Ella McGill Nine Thousand Dollars and the same is placed to her credit on our books.

"$9,000.00.                    [Signed]        Wiseman & McGill."

It was testified that, on the 1st of April, Wallace, who had previously been a bookkeeper of the old firm, became a partner, the firm name of Wiseman & McGill being continued as stated. It is also in evidence that Mrs. McGill's account was kept upon the books of the firm, and that her monthly stipend was paid out of partnershp funds. There was no evidence, however, that either Dr. Bailey, her attorney, or Mrs. McGill herself, ever consented to consider the debt as a debt of the new firm. On the contrary, Mrs. McGill testified that she always considered that, as Wiseman had assumed the debt as surviving partner, it so continued as his individual debt. Indeed, Mr. Wiseman, in his testimony, confirms that of Mrs. McGill in this respect. There was other testimony which more or less tended to support one side or the other of the controversy, which took place before a referee, when Ella McGill undertook to prove her claim against the individual estate of John Wiseman, bankrupt. The claim was objected to by Wiseman's individual creditors, on the ground that it was a debt of the firm composed of John Wiseman and Thomas F. Wallace, constituting the firm of Wiseman & Wallace, and not a debt of Wiseman, individually. Objection was also made by former creditors, that the payment of $75 a month, as interest on the $9,000, was usurious, and that the claim, if allowed for firm assets, should be subject to a reduction for all money paid as interest over 6 per cent. The referee in bankruptcy disallowed the claim against the individual estate of John Wiseman, but allowed it against the firm assets, and found that the claim should not be reduced on the ground that the $75 a month had been paid, not only as interest, but in payment for the good will of the previous business. Exceptions were filed on the part of Ella McGill, and an appeal was taken to the United States District Court for the Eastern District of Pennsylvania. The learned judge of that court reversed the referee and allowed the claim against the individual estate of John Wiseman. From this finding and decree, the present appeal was taken.

The opinion of the learned judge, which comes to us in the record, is as follows:

"McPherson, J. I regret to say, that I find myself unable to agree with the learned referee in his finding of facts in this case. I have read the testimony with care, and it seems to me to establish clearly the fact that the agreement in controversy was originally made with John Wiseman individually, and not with the firm of Wiseman & Wallace. This being so, of course it could not become an obligation of the firm unless Mrs. McGill assented thereto. The firm could not be substituted as her debtor in place of John Wiseman unless she agreed to the change, and there is no evidence that she ever made any such agreement. It is true that the amount due her was entered upon the books of the firm, and that the monthly payments were made by checks of the firm out of partnership funds, but obviously these facts could not of themselves change the character of the debt. It is not shown that she knew of the entry upon the books, and certainly it could make no difference to her from what source the monthly payments were made. The testimony leaves me in no doubt, therefore, that Mrs. McGill is entitled to make her claim against the individual estate of John Wiseman. Concerning the monthly payments, I agree with the learned referee, that they were not made as interest and are therefore not obnoxious to the charge of usury. In this respect, the report of the Referee is confirmed, but his disallowance of Mrs. McGill's claim against the individual estate of John Wiseman must be disapproved." 123 Fed. 187.

The fact that the learned judge felt compelled to differ from the conclusions reached by the referee, presumably rendered more careful the scrutiny with which the testimony was reviewed by him. As the case turns almost entirely upon questions of fact, we would feel constrained to adopt the finding made by the learned judge under these circumstances, unless a manifest error in that regard should appear to have been made.

We have, however, carefully examined the testimony set out in the record, and are inclined to agree with the conclusions reached by the court below, and its order and judgment in the premises are therefore affirmed.