### WRIGHT v. SAMPTER et al.

#### (District Court, S. D. New York. March 14, 1907.)

**1. BANKRUPTCY—PREFERENCE—KNOWLEDGE OF CREDITOR.**

Defendant, a young woman of no business experience, had had money on deposit with a bankrupt firm at 6 per cent. per annum; her uncle, of supposed large means, being the financial head of the firm. For several weeks prior to June 4, 1904, she had had no communication with any member of the firm nor with any employé thereof, and on that day she received, by mail, a letter inclosing a check for the full amount of her deposit and interest, with the statement that the firm could no longer use her money. At this time neither defendant nor her sister nor mother, who also used the firm as their bank of deposit and received similar checks, had any suspicion that it was embarrassed, but on June 13th, following, they learned through the newspapers that a petition in bankruptcy had been filed against the firm, which was, in fact, insolvent on the day the checks were received. *Held*, that such facts were insufficient to show that defendant had any reasonable cause to believe that the payment to her was intended to constitute a preference as defined by Bankr. Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 257.]

**2. SAME—CONSTRUCTION—PURCHASER.**

Where defendant received payment of her debt from a bankrupt otherwise than by descent, she was a "purchaser" within Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], declaring that a preferential transfer to any one not a "purchaser in good faith and for a present, fair consideration" will be void.

**3. SAME—FRAUDULENT TRANSFER.**

Only such transfers by a bankrupt are fraudulent under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], invalidating preferential transfers to any one not a purchaser in good faith and for a present fair consideration, as were fraudulent at common law or constituted acts of bankruptcy as prescribed by section 3 (30 Stat. 546, c. 541 [U. S. Comp. St. 1901, p. 3423]), including those within the personal property laws of New York (Laws 1897, p. 511, c. 417, § 24) prohibiting transfers "with intent to hinder, delay or defraud creditors."

**4. SAME—PARTICIPATION IN FRAUD—EVIDENCE.**

Where defendant had no knowledge of her uncle's pending insolvency at the time she received a preferential payment of her debt from a firm of which he was the dominant member, and there was nothing to indicate that she participated in his fraud in making such payment, except the fact that she did not demand or exact payment, the transfer was not fraudulent within Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], prohibiting preferential transfers made with intent to hinder, delay, or defraud creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 257.]

In Equity. Hearing on bill, answer, and agreed statement of facts.

The material facts stipulated by the parties are as follows: The plaintiff is trustee in bankruptcy of the partners and partnership of M. Sampter, Sons & Co. The defendant Elvira Sampter is a niece of the individual bankrupts,

who are joined with her as defendants. On June 4, 1904, M. Sampter, Sons & Co. were insolvent, and Arnold Sampter, one of the firm, its financial head and a defendant herein, was well aware that the firm was "financially in a critical condition." For a long time prior to the date above given, the defendant Elvira Sampter had had money on deposit with the partnership. The evidence of deposit was a passbook similar to those used by savings banks, and she regularly received interest upon her deposit at the rate of 6 per cent. per annum. She was at liberty to increase or diminish her deposit when and as she chose. She resided with her sister and widowed mother, both of whom had similar deposit accounts with the bankrupts. Both mother and daughters were wholly unfamiliar with business matters, and for several weeks prior to June 4, 1904, had had no communication, either oral or written, with any member of the partnership or with any employé thereof. Neither the defendant Elvira Sampter nor her mother nor sister had urged requested or desired repayment of their deposit accounts, or any part thereof, when on or about said June 4th each of them received by mail a letter signed by the firm, per Arnold Sampter, or at his direction; which letters read: "We find that we can no longer use your money, and therefore ask you to accept enclosed check for (the amount of deposit with interest to date) in full for your account." When these letters were simultaneously received by the defendant, her sister and mother, none of them had the slightest suspicion that the family firm was either embarrassed or insolvent. They and each of them accepted the statement contained in the letters as true, took the checks inclosed with their several communications, and collected them in the usual manner. Although this simultaneous repayment of long-standing accounts was the subject of conversation between mother and daughters, none of them was aware that she was being preferred over other creditors. About 10 days later, and on or about June 13, 1904, they learned through the newspapers that a petition in bankruptcy had been filed against their late debtor. Mr. Arnold Sampter, when he caused these relatives to be paid, not only believed, as above stated, that his firm was "financially in a critical condition," but had been informed by a bank which held a large quantity of the firm paper that none of said paper would be renewed upon maturity. Between the 3d and 10th of June the bankrupt firm paid relatives, friends, and employés who were their lawful creditors, but had not requested payment, the sum of about $30,000, and when such payments were made it was known to Mr. Arnold Sampter that his firm would not after such large disbursements be able to meet its maturing obligations. He made these payments to relatives and friends "in order to prevent possible loss to them." The firm has paid a dividend in bankruptcy of about 40 per cent. with a small balance remaining in the trustee's hands. Prior to their failure M. Sampter, Sons & Co. had for many years enjoyed good reputation and credit, and been one of the leading wholesale clothing houses of this city.

James, Schell & Elkus and Mr. Rosenberg, for complainant.
Max J. Kohler, for defendants.

HOUGH, District Judge. The facts agreed upon in this cause present two oft-mooted questions in rather an extreme and unusual form. The trustee seeks to recover the sum paid Elvira Sampter on the eve of bankruptcy, (1) because it is a voidable preference within sections 60a and 60b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), and (2) because the transfer was "with the intent" on the bankrupt's part to "hinder, delay or defraud" his creditors, and was not for "a present fair consideration" within section 67e (30 Stat. 564, c. 541 [U. S. Comp. St. 1901, p. 3449]); and should also be "held null and void as against the creditors" of the firm "by the laws of the state" of New York, pursuant to the same section.

First. It cannot be doubted that the payment in question was a preference, and that Miss Sampter is the person "benefited thereby," and the first question raised revolves around the inquiry whether she had "reasonable cause to believe that it was thereby (i. e., by the payment) intended to give (her) a preference." It has frequently been said, in actions turning upon the presence or absence of reasonable cause to believe a material or vital fact, that anything "sufficient to excite attention and put a party on inquiry is notice of everything to which inquiry would have led," and that known facts "calculated to awake suspicion" will justify an inference of actual and complete knowledge. In re Knopf, 16 Am. Bankr. Rep. 432, 144 Fed. 245; Parker v. Conner, 93 N. Y. 118, 45 Am. Rep. 178. But obviously facts, whether producing certainty or merely suspicion, must have a mind upon which to operate and affect, and the rule is equally well established that it is sufficient if the facts brought home to the person sought to be affected are such as would produce action and inquiry on the part of "an ordinarily intelligent man" (Grant v. Bank, 97 U. S. 80, 24 L. Ed. 971), "a prudent business man" (Bank v. Cook, 95 U. S. 343, 24 L. Ed. 412; Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481), "a person of ordinary prudence and discretion" (Wager v. Hall, 16 Wall. 584, 21 L. Ed. 504), "an ordinarily prudent man" (In re Eggert, 4 Am. Bankr. Rep. 449, 102 Fed. 735), "a prudent man" (Dutcher v. Wright, 94 U. S. 553, 24 L. Ed. 130).

The peculiarity of this case is that the mind to be affected is that of a confiding niece, wholly unacquainted with business knowledge, and, however intelligent and prudent in matters within her own experience, incapable of comprehending the significance of business facts, which would have been more than enlightening to men of the business world. It is therefore urged by the defendants that Barbour v. Priest, 103 U. S. 293, 26 L. Ed. 478, justifies the proposition that not only must the facts exist and be sufficiently impressive to awake inquiry in such minds as are catalogued in the cases above cited, but they must be sufficient to impress their significance upon the mind of the person to be affected —in this case a woman leading a life apart from the world of business. It was indeed said in the case last cited (one inducing great sympathy for the preferred creditor) that it is "necessary to prove the existence of this reasonable cause of belief * * * in the mind of the preferred party." Page 296 of 103 U. S. (26 L. Ed. 478). But these words must be taken in conjunction with the whole opinion, which was written in express consonance with Grant v. Bank, supra, and the phrase quoted I take to assume in "the preferred party" the mind of "an ordinarily intelligent man." It would be intolerable that the voidability of a preference should depend not upon the effect of facts admittedly or by proof known to a defendant, but upon the degree of intelligence or experience which such defendant was capable of exercising in respect thereto; such a rule would put a premium upon ignorance, and encourage the assumption thereof. The rule here applicable is, therefore: Would an ordinarily intelligent and prudent business man have had reasonable cause to believe, upon any facts known to Miss Sampter, that her uncle intended to prefer herself, her sister and mother? I think not. All that she knew was entirely consistent with the busi-

ness conclusion that, inasmuch as 6 per cent. was a high rate of interest, it was no longer profitable for the firm to pay it, and wrong for them to keep the money in a mercantile venture at lower rates, which could be obtained with greater security elsewhere. She did not know that all friends and relatives were being paid off, nor was she aware of any embarrassment on the part of her long prosperous uncle. If all she knew had been known by a merchant, I see no reason why it should have produced any other feeling than that Sampter's Sons no longer felt like paying a high rate for the use of a small sum of money.

Second. This branch of complainant's contention assumes (and I think properly) that the payment to Miss Sampter was with the intent on Arnold Sampter's part prohibited by the statute, but admits (necessarily, in my opinion) that the defendant was wholly guiltless of any participation in the bankrupt's purpose or design. In the view contended for, the ignorance or innocence of the transferee is of no consequence, provided the bankrupt, with the "intent and purpose" prescribed in 67e, executes a preferential transfer to any one not a "purchaser in good faith and for a present fair consideration." Miss Sampter was a "purchaser," because she acquired the payment to her otherwise than by descent (McCartee v. Orphan Asylum Soc., 9 Cow. [N. Y.] 437, 18 Am. Dec. 516), and her "good faith" (as defined in Searle v. School District, 133 U. S., at page 563, 10 Sup. Ct. 377 [33 L. Ed. 740]) is unimpeachable; but inasmuch as she neither requested nor desired the payment that surprised her so much to her advantage, it is denied that she got the money "for a present fair consideration," and the payment must be regarded under the act as a voluntary dissipation of a fund properly to be regarded as a trust for all creditors alike. This view of the section under consideration assumes that the bankruptcy act has laid down a new rule in respect of the voidability of fraudulent conveyances by wholly sweeping away the requirement that the transferee or grantee, to merit condemnation, shall have either actual notice of the fraudulent intent, have participated in the fraud, or had notice of some fact calculated to put him on inquiry and leading to a discovery of such fraudulent intent. Undoubtedly this assumption finds support in Sherman v. Luckhardt, 11 Am. Bankr. Rep. 26, 74 Pac. 277, 67 Kan. 682, and possibly also in Re McLam, 3 Am. Bankr. Rep. 245, 97 Fed. 922. But it cannot prevail in this court, being clearly opposed to the ruling for this circuit made in Re Bloch, 142 Fed. 674, 15 Am. Bankr. Rep., at page 751, viz., that the transfers prohibited by 67e are only those fraudulent and therefore voidable at "common law," or, what is the same thing, such as constitute acts of bankruptcy under section 3. (30 Stat. 546, c. 541 [U. S. Comp. St. 1901, p. 3423]). By "common law" must be understood the rules of property growing out of 13 Eliz. c. 5, as affected by similar statutory enactments in force in the state wherein the transaction complained of took place.

It follows that the payment to Miss Sampter is voidable under this section of the act, only if in fraud of creditors according to the law of New York as contained in the decisions of the courts of that state and (at present) in the personal property law (Laws 1897, p. 511, c. 417, § 24), prohibiting transfers "with the intent to hinder, delay or defraud creditors," and no other or different tests are to be applied there-

to than have long been used in federal and state decisions without any reference to bankruptcy.

Further consideration would be superfluous, were it not for certain decisions in this state wherein the courts have pointed out as one of the badges of fraud that the creditors preferred "took no affirmative or independent action to collect their claim; they simply accepted the advantages which the fraudulent debtor voluntarily gave them for his own purpose and as a part of the fraudulent scheme." Metcalf v. Moses, 161 N. Y. 587, 56 N. E. 67. And compare First National Bank v. Miller, 163 N. Y. 164, 57 N. E. 308; Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678. From these authorities it is urged that while a creditor demanding payment in the way of business may lawfully obtain such payment even from a·fraudulent insolvent intending to hinder and delay his creditors, provided that he himself does not participate in the fraud, a similar right does not attach to one who, without effort and without demand, merely receives payment of an unmatured debt from such fraudulent debtor. Undoubtedly as civilization, and with it business methods, become more complex, the badges of fraud increase with the opportunities for fraud; but the decisions above referred to have not changed, and do not purport to change, the rule of law. The court or jury must find participation in the fraud on the part of the payee or grantee as a matter of fact, and each case must stand upon its own facts. There is nothing in this cause, except the bare fact that Miss Sampter did not demand or expect payment, to indicate participation on her part in the fraud of her uncle, and that bare fact, even plus the relationship, is not enough to turn the scale against her; it is evidence, nothing more, and on the whole evidence she must be absolved.

The bill is dismissed