JOHN D. EASTON, TRUSTEE IN BANKRUPTCY OF WILLIAM F. DESHA AND GEORGE WILLFONG, EACH IN HIS INDIVIDUAL CAPACITY AND AS PARTNERS FORMING THE PARTNERSHIP OF DESHA AND WILLFONG, *v.* N. C. WILLFONG.

APPEAL FROM CIRCUIT JUDGE, FOURTH CIRCUIT.

ARGUED SEPTEMBER 22, 1914.                    DECIDED OCTOBER 26, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

BANKRUPTCY—*preferential transfer.*

A suit by a trustee in bankruptcy to set aside a transfer by a bankrupt as a voidable preference held not to be a suit to recover on the ground of fraud.

SAME—*insolvency—burden of proof.*

In a suit by a trustee in bankruptcy to set aside a transfer by a bankrupt as a voidable preference, the burden of proof is on the plaintiff to establish the insolvency of the bankrupt at the time of the transfer.

SAME—*books of bankrupt as evidence—individual debt of partner.*

The books of a bankrupt are evidence on the question of insolvency within four months of the date of filing the petition, but they are not conclusive, for they may be incomplete, incorrect or fraudulent. An individual debt of a member of the firm is none the less such because it is entered on the firm books, and while such entry may constitute a *prima facie* showing that the indebtedness therein referred to is a firm liability, such showing may be overcome by other satisfactory evidence.

Easton v. Willfong, 22 Haw. 259.

SAME—*schedules of bankrupt as evidence.*

    In a contest between a trustee in bankruptcy and one sought to be charged as a creditor having received an unlawful preference, the schedules of the bankrupt in the bankruptcy proceedings are admissible in evidence on the issue of insolvency.

SAME.

    Evidence considered, and held that it is not satisfactorily shown in this case that the alleged preferred creditor had at the time of the transfer reasonable cause to believe that the transfer would result in a preference.

## OPINION OF THE COURT BY WATSON, J.

    This is an appeal from a decree made by the circuit judge of the fourth circuit sitting at chambers in equity declaring a certain transfer of sixteen promissory notes, each in the sum of $75, and a chattel mortgage securing the same, by George W. Willfong to the defendant, to be null and void as an unlawful preference under section 60b of the Bankruptcy Act as amended. These notes and the chattel mortgage, prior to the date mentioned, were the property of the copartnership of Desha and Willfong, having been received by that firm on account of the purchase price of a certain automobile sold by the company to one Kenichi Doi, the maker of said notes and mortgage. On or about the first day of July, 1912, William F. Desha and the said George W. Willfong formed a partnership in the business of dealing in automobiles, their fittings and accessories, and doing a general repairing and vulcanizing business in connection therewith at Hilo in the county and Territory of Hawaii under the name of Desha and Willfong, pursuant to a partnership agreement by the terms of which said William F. Desha was to contribute $5000 and the said George W. Willfong the sum of $1000 as the capital of said copartnership. The said George W. Willfong contributed his share of the said capital to the said copartnership, having borrowed the $1000 from his father, the defendant herein, just prior to the commencement of the partnership business. Desha contributed his share of the partnership capital, having obtained the money from a Mrs.

Easton v. Willfong, 22 Haw. 259.

B. M. Allen, who has since died. In carrying out the purposes for which said partnership was formed the firm equipped a machine shop and garage and purchased materials and supplies. The books kept by the firm were inaccurate and incomplete from the very inception of the partnership. It appeared to the partners that business was good from the start and they believed that the undertaking promised to be a thriving one. A few weeks after the commencement of the business George W. Willfong became dissatisfied with the conduct of his partner and complained of his inattention to the business and his drawing checks against the firm account for his personal use, and particularly because Desha was doing so without having first informed him, Willfong, of his intention so to do. However, the withdrawal of these sums did not at any time embarrass the copartnership and the partners believed that the business was being carried on at a profit. The conduct of Desha was such that Willfong determined to dissolve the copartnership and along about the first of September, 1912, or in August, he proposed that his partner buy him out, to which proposition Desha assented and asked Willfong to wait until he could procure some money from Mrs. Allen, who seems to have been his financial backer. In the meantime Willfong was attending to the business while Desha was in Honolulu, claiming that he was there arranging to raise some money for the purpose of buying out the interest of Willfong. While Desha was in Honolulu, and a few days before the dissolution of the partnership, a check or draft in the sum of $1000 was presented to Willfong, drawn by Desha, payable to F. E. Davis & Co., which had been given by Desha as a payment on a vulcanizing plant purchased by Desha in his own name and without the knowledge of Willfong. Willfong refused to pay the check or draft and it was returned by Bishop & Co. dishonored. On September 18, 1912, a little over two months after the formation of the copartnership and immediately upon Desha's return from Honolulu, the partnership was dissolved, a dissolution agreement in writing being

entered into by the partners on that day, Willfong accepting as his one-sixth interest in the business the promissory notes and chattel mortgage hereinabove referred to. The notes were endorsed to Willfong by the firm and Willfong under the dissolution agreement transferred all his interest in the remaining partnership accounts to his former partner, who, in consideration thereof, assumed the payment of all the firm liabilities. Willfong then transferred the said notes and mortgage to his father, the defendant herein, in payment of his indebtedness to him. He had no other individual obligation except in so far as he was individually liable for the debts of the firm. On September 19, the day following the dissolution of the copartnership and the transfer of the notes and mortgage in question, an action was brought against the copartners by said F. E. Davis & Co., and the property of the former firm, then in the possession of Desha under the dissolution agreement, was attached in that action. The closing of the business of Desha by this attachment precipitated similar proceedings by other creditors and upon the levy of the execution issued upon the judgment obtained in one of these actions involuntary bankruptcy proceedings were predicated. A petition in bankruptcy was filed against the firm and members thereof on November 18, 1912, but owing to resistance made by the alleged bankrupts to the proceedings by their denial of insolvency the adjudication did not take place until May 27, 1913, on which date the firm and the individual members thereof were adjudicated bankrupt. On June 21, 1913, the plaintiff, John D. Easton, by a proper order entered in said bankruptcy court, was duly appointed trustee in bankruptcy of the said firm and of each of the partners. The present suit was brought by the plaintiff under authority of an order made by the referee in bankruptcy having jurisdiction of the bankruptcy proceedings. Plaintiff's bill of complaint herein contains the averments usual in a suit to set aside a transfer by a bankrupt as a voidable preference under section 60b of the Bankruptcy Act and, it is contended by plain-

tiff in this court in his brief, certain other allegations which attack the transfer as being one to hinder, delay and defraud creditors within the meaning of section 67e of the Bankruptcy Act.

It is obvious from an inspection of the record that the case was tried below on the theory that the transfer was complained of as being a voidable preference only and it was on this ground that the circuit judge predicated his decision and decree in plaintiff's favor. The decree can be sustained, if at all, only as one setting aside a voidable preference under section 60b of the Bankruptcy Act. The trial judge found no actual fraud on the part of the defendant or the bankrupt in the accepting or the making of such transfer, and in our opinion, from the evidence adduced, no such finding would have been warranted. It is found as a fact by the circuit judge and conceded by the plaintiff that the transfer was made to pay a pre-existing indebtedness due by the bankrupt to the defendant, that is to say, the sum of $1000, borrowed by George W. Willfong from his father for the purpose of enabling him to enter into the partnership business. A transfer in good faith to pay an honest antecedent debt is not of itself sufficient to establish actual fraud in fact, or an intent on the debtor's part, or on the part of the creditor, to hinder, delay and defraud other creditors within the meaning of subsection 67e. Collier on Bankruptcy (10 ed), p. 957.

"The transfers prohibited by 67e are only those fraudulent and therefore voidable at common law, or, what is the same thing, such as constitute acts of bankruptcy under section 3." *Wright* v. *Sampter,* 152 Fed. 196, 199, citing *In re Bloch,* 142 Fed. 674. "There is a marked distinction between a 'preferential payment' and a 'fraudulent conveyance.' Every preferential payment must to some extent hinder and delay creditors but it is not necessarily a fraudulent conveyance. * * * A preferential payment may be constructively fraudulent but it is not in and of itself a fraudulent conveyance. It can only become

the latter in the unusual case where actual fraud in addition to the preferences is established. Thus a secret trust in favor of a person making such payments might turn a mere preference into a fraudulent conveyance. But there is no proof in this case of any intent to hinder or defraud creditors more than the preferential payments in themselves would have hindered them." *Van Iderstine* v. *National Discount Co.,* 174 Fed. 521, 522, affirmed 227 U. S. 575; *Sargent* v. *Blake,* 160 Fed. 57, 61. "To avoid this transfer under section 67e of the Bankruptcy Act it is incumbent upon the complainant to show actual fraud in fact in the conveyance of the property * * * as distinguished from constructive fraud." *Meservey* v. *Roby,* 28 A. B. R. 529, 534.

The allegations contained in plaintiff's bill as to the relationship between George W. Willfong and the defendant, the youth of George W. Willfong, the transferor, and the showing that the bankrupt was stripped of his entire property by the transfer, are not sufficient, as contended by plaintiff, to bring the bill within the provisions of section 67e, and as already stated, the complaint must be treated as having been framed under section 60b of the Bankruptcy Act. Proof of the allegations referred to would not establish the intent to hinder, delay and defraud contemplated by the provisions of section 67e; such proof would be evidence to be considered with all the other facts in the case (*Wright* v. *Sampter,* supra, 200), and on the whole evidence we are of the opinion the transfer could not be avoided under section 67e of the Bankruptcy Act.

On this appeal the contentions advanced by appellant may be summarized under two general heads: (1) failure of proof to show that at the time of the transfer complained of Desha and Willfong were insolvent; (2) failure of proof to show that at the time of the transfer in question the defendant had reasonable cause to believe that the said transfer would result in a preference.

Perhaps the most important claim advanced by counsel for

plaintiff under the first contention relates to an indebtedness of $5600 appearing on the books of the firm as a partnership liability due to a Mrs. Allen, but which defendant claims was in reality an individual indebtedness due by William F. Desha, one of the partners. On this point the trial judge made the following findings: "At the time of the dissolution of the copartnership its assets were of the value from $4800 to $5200, and its liabilities, exclusive of an indebtedness to Mrs. Allen, which will require separate consideration, were $3781.50. Certain evidence was introduced by the defendant tending to show that the firm owed nothing to Mrs. Allen but that the amount advanced by her, viz., $5600, was by way of a loan to William F. Desha, one of the partners. This evidence, however, is not convincing in view of the fact that William F. Desha was not called to testify in regard to the transaction, nor his failure to give testimony accounted for, and in view of the further fact that the $5600 was entered in the handwriting of George W. Willfong in the books of the firm as a firm liability. In view of these circumstances * * * the court finds that the indebtedness to Mrs. Allen was a firm indebtedness, making the liabilities of said concern $9381.50." The importance of this question is readily discernible when it is observed that if this indebtedness were not a firm liability, but the individual liability of Desha, the assets of the firm at the time of the transfer, as found by the trial judge, were in excess of the firm liabilities and the copartnership was not insolvent. Counsel for plaintiff admitted at the bar of this court that in the event this indebtedness to Mrs. Allen was not shown to be a firm liability his action must fail. The only evidence in the record tending to prove that this indebtedness to Mrs. Allen was a firm obligation is the ledger of the firm, introduced in evidence by plaintiff, in which the account of Mrs. C. A. Allen is stated, showing a credit balance due her of $5600, with nothing to indicate that the account is not a firm account, and with nothing to distinguish it from the other accounts, admittedly firm accounts, appearing

in that book. The account is stated as follows: "Mrs. C. A. Allen 1912 July 23 $2500 ——16 $500 Sept 9 $2600" As against this showing contained in the firm's ledger there is the evidence of George W. Willfong who testified that it was he who kept the books of the firm; that the indebtedness as shown by this account with Mrs. Allen consisted of personal loans to Desha individually; that he noted the account in the ledger at the special request of Desha who told him that he wanted a record kept of his loans and these items so noted were regarded as Desha's personal account. This witness was called to the stand by the plaintiff and it was on his direct examination that this testimony was elicited. The defendant, also called as a witness by plaintiff, testified that Mrs. Allen never loaned the firm any money; "it was Willie" (meaning Desha). "How do you know that Mrs. Allen loaned Desha some money?" Witness: "I don't know whether she loaned it to him. She gave him money, whether as a present or loan I don't know. I know she gave him money; he told me himself and George did." While this testimony of the defendant appears to have been hearsay and might have been properly stricken out on motion, it was brought out by plaintiff from a witness called by him, and was permitted to remain in the record. "The books of a bankrupt are evidence on the question of insolvency within four months of the date of filing the petition. They are not conclusive upon this subject for they may be incomplete, incorrect or fraudulent, but ordinarily they are important evidence and entitled to much weight. The schedule and the inventory and appraisement are also evidence upon the same question." *In re Docker-Foster Co.,* 123 Fed. 191; *Hackney* v. *Raymond Bros. Clarke Co.,* 68 Neb. 633, 639. Plaintiff himself testified that the books of the firm were not in very good shape, and George W. Willfong, called as a witness by plaintiff, testified that he had kept the books of the firm but there were incorrect entries and mistakes therein. The burden of proof was on plaintiff to establish, among other things, the insolvency

of the firm at the time of the transfer (*In re Carlile*, 199 Fed. 613, 617; *Tumlin* v. *Bryan*, 165 Fed. 166), and we think with respect to this indebtedness due to Mrs. Allen, proof of which was vital on the question of such insolvency, he has not satisfied that burden. The circuit judge, as shown by the excerpt from his decision above quoted, seems to have taken the view that the burden was on defendant to show that this Allen indebtedness was not a firm liability and that therefore the firm was not insolvent. The Bankruptcy Act does not place the burden of proving the solvency of his debtor upon one who is charged with having received a preferential payment from an alleged insolvent. The very reverse of this is true. *Baden* v. *Bertenshaw*, 68 Kan. 32, 36. Nor was it incumbent on the defendant to call William F. Desha to testify in regard to the transaction. The evidentiary value of the book entry showing this indebtedness as a firm liability is greatly diminished by the testimony of the plaintiff that the books were not kept in good shape and the testimony of George W. Willfong that the books contained incorrect entries. Assuming, however, that the book entry constituted a *prima facie* showing of this indebtedness to Mrs. Allen as a firm liability, we are of the opinion that such showing was overcome by the testimony of George W. Willfong and the defendant above referred to, and we think the plaintiff failed to prove that at the date of the transfer the firm of Desha and Willfong was insolvent. An individual debt is none the less such because it is entered on the firm books. Collier on Bankruptcy (10 ed) 194; *Hibberd* v. *McGill*, 129 Fed. 590.

On the trial of the cause defendant's counsel offered in evidence the schedule of the bankrupts, prepared and filed by Desha, one of the members of the firm. The schedules were offered on the question of insolvency generally and among other things for the purpose of showing that the Allen indebtedness, above referred to, had been scheduled by William F. Desha, the partner who prepared the schedules, as his individual liability, for which he had given his notes to Mrs. Allen. On objection

by plaintiff's counsel the schedules were excluded from evidence. The schedules of the bankrupts should have been admitted in evidence. *Hackney* v. *Raymond Bros. Clarke Co.*, 68 Neb. 633-639; Lowell on Bankruptcy, Sec. 98; *Credit Men* v. *Furniture Co.*, 26 A. B. R. 874; *In re Docker-Foster Co.*, 123 Fed. 191; Collier on Bankruptcy (10 ed) 792.

Did the defendant have reasonable cause to believe upon the facts known to him that the transfer would result in a preference? We think not. "In a suit by a bankrupt's trustee to recover a preference alleged to be voidable, Bank'r Act July 1, 1898, * * * the burden of proof is on the trustee to show that the bankrupts were insolvent when the transfer was made and that the creditor had reasonable ground to believe that the enforcement of the transfer would effect a preference." *In re Carlile*, supra, p. 613. The findings of the trial judge upon this issue, as contained in his decision, are as follows: "The evidence shows that N. C. Willfong, the defendant herein, because of his financial interest and because of his relationship and intimacy with the said George W. Willfong, was in a position to know of the financial condition of the firm during its existence. It was shown that he occasionally visited their place; that on at least two occasions he endorsed their paper and that he was in daily communication with his son. The defendant's claim appears in a schedule of creditors filed with the referee in bankruptcy in the bankruptcy proceeding above referred to." As will be seen, one of the elements upon which the trial judge based his conclusion as to defendant's knowledge of insolvency was the fact that the defendant had endorsed the firm's paper on at least two occasions. From the evidence it appears that the first occasion was on July 1, 1912, when he endorsed the note of the firm for $500. This was about the time the partnership commenced business, and when the firm dissolved this note had not yet become due. The other occasion upon which defendant endorsed the firm's paper was on the 7th day of September, 1912, eleven days before the transfer complained of, when he

endorsed a note for the firm in the sum of $2600. In the case of *Sparks* v. *Marsh,* 177 Fed. 739, where it was sought to recover an alleged preference, the court found that the bankrupt was insolvent at the time of the preference and that the payment in question was intended by the bankrupt as such. There was proof as to the business and friendly relationship that had existed between the bankrupt and the defendant and the latter's familiarity with the business of the bankrupt and as to financial transactions between the parties concerning said business, and it was claimed that that proof was of such a nature as to raise a presumption that the defendants knew of the bankrupt's financial condition, which presumption, it was further claimed, was so strong as not to be overcome by the defendant's denial of such knowledge. The opinion contains the following at page 742: "But there is no direct evidence to show that fact (knowledge of insolvency) but mere surmises arising, it is claimed on behalf of the complainants, from the circumstances shown to have prevailed at the time. * * * While the personal relations existing between the parties might raise the presumption that the defendants knew White's financial condition, this presumption is satisfactorily rebutted by the fact that they endorsed a note for one thousand dollars only a month before that time. These acts are certainly strong circumstances to dispel the presumption of knowledge of insolvency, for it is hardly reasonable to suppose that they would have become the endorsers of the note for one thousand dollars if at the time they doubted his insolvency and consequent ability to pay it at maturity." Practically the same argument is advanced in this case as was urged in the *Marsh* case, supra, plus the relationship between the parties, the youth of the transferor, etc., but in our opinion the fact that the defendant endorsed the firm paper for $2600 on September 7, 1912, just eleven days before the transfer complained of was made, is a strong circumstance to dispel the presumption of knowledge of insolvency. Defendant denied that he knew or believed the firm to be insolvent. His evidence, cor-

roborated by that of his son, was that he had visited the place of business of the firm on one or two occasions; that he never examined the books of the firm or attempted in any way to participate in the firm's management; that he had absolute confidence in his son and that when he asked his son how the business was getting along, his son replied, "All right." The firm was at that time employing from two to four extra men in the business and one of these men told the defendant that the company had a lot of work to do in the shop. The storeroom and shop at all times presented a busy appearance when defendant called or was passing, and from the evidence as a whole we are convinced that George W. Willfong believed, erroneously, as subsequent events have disclosed, that the business was being profitably conducted. This belief was communicated by George W. Willfong to the defendant and was shared in by him. Defendant knew of the dissatisfaction that existed on his son's part with the conduct of Desha, his partner, and knew that his son contemplated making a sale of his interest in the business to Desha. When the notes and chattel mortgage were turned over to him by his son in payment of the one thousand dollar debt due him, defendant knew that the dissolution had been effected by the partners and that in conformity with the dissolution agreement entered into between the partners his son had received these notes and the mortgage in full satisfaction of his one-sixth interest in the business. He also knew that all of the other assets of the firm, under the dissolution agreement, were turned over to Desha and that Desha had assumed the payment of all liabilities due by the firm. At that time no suits were pending against the firm and so far as defendant had reason to believe the business was solvent. With his knowledge of the fact that six thousand dollars had been contributed as the capital of the partnership only about two months before that time and that his son owned a one-sixth interest in the business he had no reason to believe that these notes, endorsed to his son by the firm and by his son turned over to him in payment of

the debt due him, represented anything more than a fair value of his son's interest in the business as *bona fide* agreed on between the partners in their dissolution negotiations. Defendant knew that owing to his son's openly expressed dissatisfaction with his partner's conduct the relations at that time existing between the partners were not particularly friendly and certainly he had no reason to believe that Desha, in buying out his son's interest in the business and assuming the liabilities of the old firm, had paid for such share more than it was reasonably worth, or permitted George W. Willfong to withdraw from the assets of the firm more than the fair value of such interest. From the entire evidence we are of the opinion that all defendant knew was entirely consistent with the business conclusion that the firm was solvent and that upon the dissolution Desha in consideration of the firm's assets being turned over to him had assumed the liabilities of the business and paid his son $1200, as represented by the notes, for his share and interest therein. "As to the meaning of the phrase 'having reasonable cause to believe' * * * dicta are not wanting which assume that it has the same meaning as if it had read 'having reasonable cause to suspect,' but the two phrases are distinct in meaning and effect. It is not enough that the creditor has some cause to suspect the insolvency of his debtor, but he must have such a knowledge of facts as to induce a reasonable belief as to his debtor's insolvency in order to invalidate a security taken for his debts." *Grant* v. *National Bank,* 97 U. S. 80, 81; *Fairer* v. *Hackfeld & Co.,* 14 Haw. 209, 212.

Even though we assume that the partners and the partnership were insolvent on September 18, 1912, we think the facts in this case bring it fairly within the reasoning of *Sargent* v. *Blake,* 160 Fed. 57, in which case the circuit court of appeals for the eighth circuit, held, *inter alia:* "When all of the partners consent, their application of the partnership property to the payment of an individual debt of a partner within four months of the filing of a petition in bankruptcy, and while the

partners and the partnership are insolvent, does not evidence any intent to hinder, delay or defraud the credtiors of the partnership within the meaning of section 67e of the bankruptcy law. Act July 1, 1898. * * * And it is not void or voidable where the creditor paid has no reasonable cause to believe that a preference was intended thereby."

For the reasons given the decree appealed from is reversed and the cause remanded with directions to dismiss the bill.

*C. S. Carlsmith* for plaintiff.

*J. W. Russell* (*R. W. Breckons* with him on the brief) for defendant.