## BARBOUR v. PRIEST.

1. In order to render a mortgage of real estate made by an insolvent debtor, void as a preference and fraudulent conveyance, within the meaning of the thirty-fifth section of the Bankrupt Act of March 2, 1867, c. 176 (14 Stat. 534), it must be affirmatively shown by his assignee in bankruptcy that the grantee had reasonable cause to believe that the grantor was insolvent at the time he executed the mortgage, and that it was made with intent to defeat the bankrupt law.
2. *Grant* v. *National Bank* (97 U. S. 80) approved.

APPEAL from the Circuit Court of the United States for the Northern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. A. K. Dunn* for the appellants.

*Mr. N. N. Leyman, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The appellee brought his bill in chancery in the District Court for the Northern District of Ohio, as assignee in bankruptcy of Hubbard Colby, to set aside and avoid two mortgages, made to appellant a short time before proceedings were commenced against Colby as a bankrupt. The District Court rendered a decree against the assignee, which was reversed on appeal to the Circuit Court, the latter holding the mortgages void under the bankrupt law. From that decree this appeal is taken.

Mrs. Barbour was the widow of Justus S. Barbour, and guardian of his minor children, and Colby, the bankrupt, was administrator of said Barbour's estate. He was the brother-in-law of Mrs. Barbour, whose husband had been dead many years;

and Colby, after administering the estate, had retained in his hands about $24,000, which he had never paid over to her, as he should have done.

Colby was a man of reputed wealth and the owner of much valuable real estate, and it is obvious from the testimony that Mrs. Barbour reposed unlimited confidence in him, and relied on him for the general management of the estate. On the eleventh day of June, 1873, Mrs. Barbour received a notice from the probate judge to make a settlement, showing the condition of her accounts as guardian, and to file a new bond. She filed a new bond, but did not make the settlement. On September 20, of the same year, she received another notice, requesting her to file a statement of her account the next day. She swears in her testimony that she handed both these notices to Mr. Colby, and requested him to attend to the affair, and that she relied on him entirely in the matter. On the first day of October, Colby made two mortgages on distinct parcels of real estate, for the purpose of securing his indebtedness to Melissa A. Barbour, in her right as widow, and as guardian of the minor children of her husband, in the sum of $22,722.20, then in his hands, as administrator of the estate of Justus Barbour.

Colby was adjudicated a bankrupt on a petition filed Nov. 3, 1873.

The testimony on which the decree was rendered is very voluminous, and need not be critically examined here. We think three propositions of fact are so clearly established that there can be little doubt about them. They are : —

1. That when Colby made the mortgages to Mrs. Barbour he was insolvent, and knew he was in that condition.

2. That he intended by those mortgages to give Mrs. Barbour a preference over his other creditors, by securing the debt due her and her children from him, as administrator of Barbour's estate.

3. That Mrs. Barbour did not know, nor have reasonable cause to believe, that Colby was insolvent when the mortgages were made and filed for record.

It will be perceived that the conveyances which are here in question were made, and the proceedings in bankruptcy were commenced against Colby, before the date at which the Revised

Statutes became the law, and before the act of 1874, amendatory of the bankrupt law, was passed. The validity of these mortgages, then, so far as they are affected by the bankrupt laws of the United States, is to be determined by sect. 35 of the original act of March 2, 1867, c. 176, 14 Stat. 534. So much of that section as relates to the question before us reads as follows: —

" SECT. 35. And be it further enacted, that if any person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance, of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited."

The act of making these mortgages by Colby, though he knew that he was insolvent, and knew that he was preferring Mrs. Barbour as a creditor at the expense of others, is not forbidden by the common law, and is not a violation of the statute laws of most of the States of the Union. Nor is it an act forbidden by any general rule of morals or of abstract justice. It was in fact a meritorious act, aside from the positive rule established by the bankrupt law. He had long had this money of a confiding widowed sister-in-law and her orphan children, and while holding it in a fiduciary capacity he had used it for his own purposes. He saw her called to account for it by the Probate Court, and knew he was unable to refund it. He also saw the gulf of bankruptcy before him, and before he was buried beneath its waters he determined at least to secure this debt, — the creation of a trust reposed in him. Who shall arraign him for it in the court of conscience?

If, then, it was forbidden neither by the common law, nor by

the statute of the State, nor by the highest sense of honor, it must be made to appear clearly that it is void under the section of the bankrupt law which we have quoted, or else it must stand.

It is a fundamental condition of the right of the assignee to avoid such a conveyance, that the person receiving it, or to be benefited thereby, should have had reasonable cause to believe that the person making such conveyance was insolvent, and that it was made in fraud of the Bankrupt Act.

The obvious meaning of this provision is to require the concurrence of the creditor who gets security for his debt in the purpose of defeating the Bankrupt Act. Such person must have reasonable cause to believe the grantor in the conveyance was insolvent at the time it was executed, and that it was made with intent to defeat the bankrupt law. Both these must exis., as facts which the grantee had reasonable cause to believe. And so careful was Congress to protect the rights acquired by an honest creditor, that unless bankrupt proceedings are commenced by or against the debtor within four months after such a preference, it should stand good, though the creditor knew the debtor was insolvent, and knew that the conveyance was intended to defeat the purpose of the bankrupt law in securing equality of distribution of the debtor's property. And this period was reduced by the act of 1874 to two months.

It has never been denied, so far as we are advised, that it is necessary for the assignee of the bankrupt, in attacking such a conveyance, to prove the existence of this reasonable cause of belief of the debtor's insolvency in the mind of the preferred party.

The testimony fails to establish that Mrs. Barbour had any reasonable cause to believe this of Colby. She was a widow, devoted to her children. Her business affairs were managed for her by others. Colby was her brother-in-law and friend, and had been the friend of her deceased husband. He had been reputed for many years to be a wealthy man. He was known to be the owner of valuable real estate. All this was well understood by Mrs. Barbour, while she did not know, and had no reason to suspect, that he was largely in debt, and his real estate covered by mortgages. Up to the time of the fail-

ure of the First National Bank of Mansfield, Sept. 26, 1873, very few persons had any doubt of Colby's entire solvency. The rapid succession of events in the locality where he and Mrs. Barbour resided, and their influence upon his condition, as described by some of the witnesses, might well have been matters of which she was ignorant. She swears that she was not aware of the effect of these matters on him, and no one is able to say that she had any reason to be. Nothing was brought to her notice or attention which would suggest a suspicion of his insolvency, and her confidence in him was clearly not shaken.

In *Grant* v. *National Bank* (97 U. S. 80) this court said: " The act very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man." p. 82. Tested by this rule, which, we think, is the sound one, there is no evidence of any such knowledge brought home to Mrs. Barbour. In fact, we do not believe that at the time the deeds were executed she even suspected Colby's insolvency or contemplated his failure.

It results from this view of the case that the decree of the Circuit Court must be reversed, and a decree rendered establishing the validity of the mortgages to her and adjusting the rights of the parties on that basis.

*So ordered.*