FELIX COUTURIE, TRUSTEE, v. PIO CRESPI.

Decided January 18, 1911.

**1.—Bankruptcy—Preference—Knowledge of Insolvency.**

Payments made by an insolvent within four months of the filing of petition for bankruptcy are not recoverable by the assignee from one who received them without reasonable cause to believe the debtor insolvent. His knowledge must be of facts reasonably sufficient to produce a belief, not a mere suspicion. See evidence held sufficient to support a finding of absence of reasonable grounds for such belief.

**2.—Appeal—Briefs.**

Assignments of error not followed by such propositions and statements as will enable the court to pass on the question need not be considered.

**3.—Evidence—Bill of Exceptions.**

A bill of exceptions to the exclusion of evidence should show what the answer of the witness would have been.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Saunders, Dufour & Dufour* and *Jno. W. Davis,* for appellant.—It was not necessary that Crespi should have had actual knowledge or even belief that the payment would result in a preference to him; but if the surrounding circumstances would lead an ordinarily prudent business man to conclude that it was intended by him as a preference, then it is voidable by the trustee. Toof v. Martin, 13 Wall., 40; Dutcher v. Wright, 94 U. S., 553.

*Prendergast & Williamson,* for appellee.—It is not enough that a creditor has some cause to suspect the insolvency of his debtor, but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency in order to invalidate any payments upon his debt under the Bankruptcy Act as a preference. Grant v. Bank, 97 U. S., 80; Tumlin v. Bryan, 165 Fed., 166; Stuckey v. Bank, 108 U. S., 74; Barbour v. Priest, 103 U. S., 293.

One who has the funds of another in his possession has the right to offset such funds against an indebtedness owed him by such person upon his being declared a bankrupt, and such offsetting does not constitute a preference under and by virtue of the Bankruptcy Act. New York County Nat. Bank v. Massey, 192 U. S., 138; Norfolk & Western Ry. Co. v. Graham, 145 Fed., 809.

KEY, CHIEF JUSTICE.—Both parties have made statements of the nature and result of this suit, but the one contained in appellee's brief is more succinct and is substantially correct. It is as follows:

"Felix Couturie, the trustee of Gussoni & Co., who were adjudged bankrupts on April 14, 1908, filed this suit against Pio Crespi, who had been an employee of Gussoni & Co. for about three years prior to their bankruptcy.

"The suit was first a suit for debt to recover the sum of $8335.71, alleged to have been the indebtedness of Crespi to Gussoni & Co. at the time of their bankruptcy, which indebtedness grew out on account of Crespi having overdrawn his account for that amount. The second ground or theory of Couturie's case was that Crespi, being a creditor of Gussoni & Co., had received a preference which was recoverable under and by virtue of the Bankruptcy Act by reason of having drawn within four months next preceding the filing of said petition in bankruptcy $2700, which he drew and was charged to his own account on February 21, 1908, and to recover also the following sums of money, which were

alleged to have been drawn out of the funds of Gussoni & Co., and appropriated to his own use: February 21, 1908, $10; February 21, 1908, $150; February 19, 1908, $350; February 21, 1908, $350; February 26, 1908, $130.51; February 18, 1908, $100; February 15, 1908, $100; February 5, 1908, $175.

"The defendant, Crespi, answered by general demurrer, special demurrers, general denial and by special answer, wherein he plead that he had been employed by Gussoni & Co. in the city of Savannah for the cotton season of 1905-1906, 1906-1907 and 1907-1908. That by the terms of his employment he was to receive a salary of 4 per cent of the profits of said business per annum, but in the event the profits should not reach the sum of $4000 per annum, that he was guaranteed a minimum of $4000 per annum for his services. That in addition to such salary he was to receive the sum of $150 per month to cover his expenses on account of the conduct of such business, which sum was to constitute no part of his salary but was to be charged as a part of the expense of Gussoni & Co. That in conformity with his said contract of employment he had drawn out the sums of money charged by plaintiff in the exhibit attached to plaintiff's second amended petition, but that in the keeping of the books at Savannah his account was balanced from time to time by charging up such balances to New Orleans, and that no credits had been given him for the amount that he was entitled to on the books of Gussoni & Co. at Savannah, and that such credits should have been credited on the books of Gussoni & Co. at their head office in New Orleans, which had not been done. That in truth and in fact he was not indebted to said firm in any sum whatsoever or to Couturie as trustee for such firm.

"2. That he had no notice or knowledge of the insolvency of the firm of Gussoni & Co. at the time he drew out said $2700 or any other sum which was received by him individually. That as to the sums which he paid to the creditors of Gussoni & Co. which were attempted to be charged to him, that such sums were not paid out with the view of appropriating the same to his own use and benefit, and same were not so appropriated, but such funds as were paid out were paid out in due course of business, without any knowledge of insolvency or intent of a preference.

"3. That as to the funds which were in his hands, that he had the right to retain such funds, or so much thereof as were sufficient to pay any and all indebtedness due by Gussoni & Co. to him, and offset same against the indebtedness of said firm to him. That such offsetting or retention of said funds, under and by virtue of the Bankruptcy Act was permissible and same did not constitute a preference within the acts of Congress relating to bankruptcy.

"The appellant filed a supplemental petition, joining issues. The trial was had before the court, who rendered a judgment in favor of the appellee, from which judgment this appeal is had."

The trial judge filed no conclusions of fact and law, but the judgment rendered implies findings in favor of the defendant, first, as to the terms of the contract fixing his compensation; and, second, that he

had no knowledge or notice of the insolvency of Gussoni & Co. at the time he drew out the sums of money sought to be recovered by the plaintiff; or, third, that the funds referred to were in his hands and he had the right to retain same as an offset against the indebtedness of Gussoni & Co. to him. The defendant submitted testimony amply sustaining the first two findings, which renders it unnecessary to decide as to the third. However, there was some testimony tending to sustain the latter defense. The contentions urged by counsel for appellee upon the subject of preferences under the bankruptcy statute seem to be sustained by the following authorities: Grant v. Bank, 97 U. S., 80; Barbour v. Priest, 103 U. S., 293; Stuckey v. Bank, 108 U. S., 74; Tumlin v. Bryan, 91 C. C. A., 200, 165 Fed., 166.

In Grant v. Bank, supra, the court say: "Some confusion exists in the cases as to the meaning of the phrase, 'having reasonable cause to *believe* such a person is insolvent.' Dicta are not wanting which assume that it has the same meaning as if it had read, 'having reasonable cause to *suspect* such a person is insolvent.' But the two phrases are distinct in meaning and effect. . It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the Act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim and have a strong desire to secure it, and yet such belief as the Act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances, is not prohibited by law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose."

In the case at bar it was shown that Crespi, the defendant, had heard rumors concerning Gussoni & Co.; that he sent a telegram to their headquarters at New Orleans so informing them, and received the following reply: "Rumors of failure absurd. We have trouble caused by a concern here. Tomorrow everything will be settled." There was other testimony tending to show that the defendant believed, and had reason to believe, that the firm was solvent, and that one member of the firm was a man of very large means. The testimony referred to justified the court in finding that the defendant had no knowledge or notice that Gussoni & Co. and the individuals composing that firm, were insolvent at the time that he withdrew the several sums of money in controversy, and applied them as set out in his answer. And not having such notice, and the sums referred to having been used in pay-

ment of his own salary and of other legitimate debts and expenses of the firm, the plaintiff, as trustee in bankruptcy, was not entitled to recover the same.

Besides the questions already referred to, appellant's brief contains several assignments relating to the action of the trial court in rulings made upon the admissibility of testimony. Some of the assignments referred to are not followed up in appellant's brief with such propositions and statements as will enable this court to pass upon the assignments without referring to the transcript; and, for that reason, they might be ignored. (Kostoryz v. Leary, 130 S. W., 456, and cases there cited.) However, the assignments referred to have been considered in connection with the record, and no reversible error has been found. As to some of the rulings referred to, where the court sustained exceptions to certain questions, the bills of exception fail to show what answers would have been given to the questions; and, for that reason, if for no other, those assignments would have to be overruled.

Upon the whole case, and after considering all the assignments, our conclusion is that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.