### In re F. M. & S. Q. CARLILE.

(District Court, D. North Carolina. September 30, 1912.)

1. BANKRUPTCY (§ 224*)—PREFERENCES—ACTION TO RECOVER PROPERTY—NATURE OF SUIT.

Bankr. Act July 1, 1898, c. 541, § 23b. 30 Stat. 552 (U. S. Comp. St. 1901, p. 3431), as amended by Act Feb. 5, 1903, c. 487, § 8, 32 Stat. 798 (U. S. Comp. St. Supp. 1911, p. 1499), conferring on federal and state courts jurisdiction of suits by the trustee to recover property fraudulently or preferentially transferred or incumbered within four months before bankruptcy, does not confer jurisdiction on the referee of a proceeding by the trustee to recover choses in action pledged by the bankrupts to the receiver of a bank to secure an overdraft within four months of the bankruptcy proceedings, on the ground that such transfer constituted a voidable preference; the receiver of the bank claiming adversely to the bankrupts and to their trustee, and such action not being a proceeding in bankruptcy, but an action to recover property from an adverse claimant.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 383; Dec. Dig. § 224.*]

2. BANKRUPTCY (§ 311*)—PREFERENCES—AVOIDANCE.

Bankr. Act July 1, 1898, c. 541, § 57g, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), as amended by Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 (U. S. Comp. St. Supp. 1911, p. 1504), declares that the claims of creditors who have received preferences voidable under section 60b, or to whom conveyances, transfers, assignments, or incumbrances, void or voidable under section 67e, have been made or given, shall not be allowed, unless such creditors surrender their preferences, etc. Section 60a declares that a person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing thereof and before adjudication, procured or suffered judgment against him, or made a transfer of any of his property, the effect of which will be to enable any one of his creditors to obtain a greater percentage than any other of the same class, etc. *Held*, that a preference under section 60a is not voidable, nor does it prevent the preferred creditor from proving his claim for any balance remaining due after exhausting the property transferred.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** BANKRUPTCY (§ 166\*)—PROPERTY TRANSFERRED—RECOVERY BY TRUSTEE—PREFERENCES.

    Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), does not confer on the trustee the right to recover property transferred by the bankrupt within four months prior to bankruptcy proceedings, unless the elements prescribed by section 60b are shown to exist.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.\*]

**4.** BANKRUPTCY (§ 166\*)—PROPERTY TRANSFERRED—"PREFERENCE"—RECOVERY BY TRUSTEE.

    Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), declares a recoverable "preference" to consist of a transfer of property within four months of the filing of the petition by a person who is insolvent, when the person to whom the transfer is made shall then have reasonable cause to believe that the enforcement of the transfer will effect a preference. *Held*, that where, at the time the bankrupts transferred certain choses in action to the receiver of a bank to secure an overdraft, the receiver did not have reasonable cause to believe that the bankrupts were insolvent, as distinguished from mere ground for suspicion that they might be, and their financial condition was such at the time of the transfer that the bankrupts themselves might reasonably have thought that they were not insolvent, the transfer was not voidable.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.\*

    For other definitions, see Words and Phrases, vol. 6, pp. 5489–5499; vol. 8, p. 7759.]

**5.** BANKRUPTCY (§ 303\*)—PREFERENCES—VACATION—BURDEN OF PROOF.

    In a suit by a bankrupt's trustee to recover a preference alleged to be voidable under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), the burden of proof is on the trustee to show that the bankrupts were insolvent when the transfer was made, and that the creditor had reasonable ground to believe that the enforcement of the transfer would effect a preference.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.\*]

    In Bankruptcy. In the matter of bankruptcy proceedings of F. M. & S. Q. Carlile. On petition to review a referee's order setting aside a transfer of certain choses in action made by the bankrupts to the receiver of the Bank of Tarboro. Reversed.

    James Pender, of Tarboro, N. C., for estate.

    H. A. Gilliam and W. Stamps Howard, of Tarboro, N. C., for receiver.

    CONNOR, District Judge. The controversy presented by the record relates to the validity of the transfer of certain choses in action made to the receiver of the Bank of Tarboro by the bankrupts within four months prior to the institution of proceedings in bankruptcy, to secure an overdraft due the bank.

    [1] Before proceeding to discuss the merits of the case, I deem it proper to call attention to the irregularity in the proceedings had before the referee and the method adopted for bringing the question, raised by his ruling and exceptions thereto, before the court. The trustee seeks to have the receiver deliver certain choses in action or

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the proceeds thereof, transferred to him by the bankrupts within four months prior to the institution of proceedings in bankruptcy, alleging that such transfer constituted a voidable preference. It will be observed, by reference to the language of section 60b, that in such cases the trustee is empowered to institute an action in the court designated by the act.

"The Bankrupt Act, as amended, confers jurisdiction of suits for the recovery of property under sections 60b, 67e, and 70e upon the courts of bankruptcy, without the defendant's consent." 2 Loveland, Bankruptcy, § 536.

"An action to recover property from an adverse claimant, for the estate of a bankrupt, is not a proceeding in bankruptcy. It presents a controversy arising in bankruptcy. The referee has no jurisdiction in such cases. The general rule is that the trustee must bring an independent suit at law, or in equity, to recover money or property in the possession of a person who claims a right, title, or interest in it as against the trustee. Summary proceedings on a motion, or notice, or rule, to show cause, cannot be substituted for plenary suits in such cases." Loveland on Bankruptcy, § 540.

In Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620, it appeared that the bankrupt had deposited certain notes with his surety on a bail bond given in an action pending in the state court. Upon his adjudication in bankruptcy, the trustee, by a proceeding in the bankrupt court, sought to enjoin the surety from collecting the notes and to have them delivered to him for the benefit of the bankrupt's estate. Referring to the procedure, Mr. Justice Peckham said:

"It was a summary application to the court in bankruptcy to grant an order in a matter, the result of the granting of which would be to immediately take from the surety moneys which had been deposited with him before the commencement of the proceedings, and thus compel him to come into the bankruptcy court for the litigation of questions as to his right to retain the money claimed by him. It would also enjoin the plaintiffs in the state suits from proceeding to collect their judgments from the surety in the bail bonds. To extend such a jurisdiction over an adverse claimant would be within the prohibition of sections 23a and 23b, whether such jurisdiction were exerted by an action, strictly so called, or by a summary application to the court in bankruptcy. * * * If the trustee desired to test the question of the right of the surety to retain the money, he must do so in accordance with the provisions of the sections of the Bankrupt Act, above referred to."

The learned justice points out clearly the distinction between the facts in the case before the court and those in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, in which the summary jurisdiction of the bankrupt court to order the delivery of property to the trustee was sustained.

In First National Bank v. Title & Trust Co., 198 U. S. 280, 288, 289, 25 Sup. Ct. 693, 695 (49 L. Ed. 1051), Mr. Chief Justice Fuller, referring to the similarity of the language, in this respect, used in Act March 2, 1867, c. 176, 14 Stat. 517, and that of 1898, says that the decisions construing that act are applicable, and that—

"it was settled that the bankruptcy court was without jurisdiction to determine adverse claims to property, not in possession of the assignee in bankruptcy, by summary proceedings, whether absolute title or only a lien was asserted."

Reference to the language of section 23 of the Bankrupt Act of 1898, in the light of the decisions of the Supreme Court, demonstrates that Congress—

"manifested its intention that controversies, not strictly or properly part of the proceedings in bankruptcy, but independent suits, brought by the trustee in bankruptcy to assert a title to money or property against strangers to those proceedings, should not come within the jurisdiction of the District Court of the United States, 'unless by consent of the proposed defendant.' One object in inserting this clause in the act may well have been to leave such controversies to be tried and determined, for the most part, in the local courts of the state, to the greater economy and convenience of litigants and witnesses." Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Wall v. Cox, 181 U. S. 244, 21 Sup. Ct. 642, 45 L. Ed. 845.

Subsequent to these decisions, section 23b, was amended by adding the words:

"Except suits for the recovery of property under section sixty, subdivision b, and section sixty-seven, subdivision e and section seventy, subdivision e." Amendment of 1903.

A standard writer on bankruptcy, discussing the subject, says:

"The amendatory act of 1903 has, however, re-enacted the doctrine [of the act of 1867] of concurrent jurisdiction [in the federal and state courts] at least as to suits by the trustee to recover property fraudulently or preferentially transferred or incumbered within the four months period." Collier, Bankruptcy (8th Ed.) 394.

The amendments to the bankrupt law, as interpreted by the court, would seem to clarify the subject of jurisdiction in plenary suits. When the trustee deems it his duty to demand, and seek to recover, the possession of property, or the proceeds thereof, held by an adverse claimant, or one to whom a transfer, assignment, or other conveyance has been made, which under the provisions of section 60b is a voidable preference, or under section 67e is a fraud upon creditors, under the Bankruptcy Act, or under section 70e under the state laws, he must bring a plenary action in the District Court of the United States, or in the state court, having jurisdiction of the subject-matter and parties. Collier, Bankruptcy, 407, 408. The question of jurisdiction of the referee to proceed summarily to order the surrender of property held by an adverse claimant is discussed, and the authorities reviewed, in Re Peacock (C. C.) 178 Fed. 851. The reason upon which Congress proceeded is stated by Mr. Loveland in his work on Bankruptcy (4th Ed.) § 37. He says:

"In such cases the court is not exercising jurisdiction in bankruptcy, but the jurisdiction of an ordinary court of law or equity, and the parties would be deprived of the usual process of law in defense of their rights in summary proceeding. The defendant, in such cases, may be entitled to trial by jury, or to put in evidence upon an issue regularly made by pleadings, or to have the decree or judgment reviewed upon appeal or writ of error."

It is a mistake to suppose that all persons having transactions with one who is adjudged a bankrupt, acquiring rights of property adverse to the bankrupt, and therefore to his trustee, who succeeds to the bankrupt's rights, may be drawn, without their consent, into the bankrupt court before the referee, and such rights summarily dealt with, depriving them of trial by jury and other rights which, but for the intervening bankruptcy, are secured to them. Such a person is not required to go into the bankrupt court to assert his rights, nor can he, without his consent, be drawn into it by summary process. It

is equally clear that if one be in possession of property as the bailee or agent of the bankrupt, or if he takes from the possession of the trustee property belonging to the bankrupt, he may, upon notice, be summarily ordered to surrender such property to the trustee. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. The referee may, upon petition of the trustee, and upon notice to such person, proceed to ascertain whether the person in possession is a bailee or agent, or otherwise holds such possession for the bankrupt, or whether he is an adverse claimant. If, upon such examination, he finds that such person is an adverse claimant, he must dismiss the petition and remit the trustee to his plenary action; otherwise, he may order the delivery of the property to the trustee. His ruling in this proceeding may, upon the petition of either party, be reviewed by the judge of the District Court. General Orders in Bankruptcy 27;[1] Collier on Bankruptcy (8th Ed.) 883. When the ruling complained of pertains to questions arising in the course of the administration of the estate, of which the referee has jurisdiction, it is subject to review as prescribed by the General Order. This can be done only upon petition. The Circuit Court of Appeals has jurisdiction to review the orders and judgments of the District Court upon matters of law. Section 24. See Collier on Bankruptcy, 433.

The record in this case does not, in many respects, conform to the statute or provisions of the order, and, but for the fact that the parties have submitted themselves and their rights to the jurisdiction of the court, waiving all questions of procedure, consenting that the referee should hear the matter, it would be my duty to remand the record to the referee and direct him to dismiss the proceeding. This would result in delay, and entail expense to the parties and the estate of the bankrupt. The testimony is undisputed and the question of law free from difficulty. I therefore deem it my duty, in the interest of substantial justice, and to prevent further delay, to dispose of the case as presented upon the record. This, however, is not to be regarded as a precedent for future action in this district. It is one of the evils, against which an intelligent sentiment, both professional and lay, is making protest, that substantial justice is too frequently either delayed or denied by a nonobservance of rules of procedure, or by their rigid, technical enforcement.

[2] Proceeding, therefore, to a disposition of the case as disclosed by the transcript, I note that the referee bases his conclusion upon the language of section 60a, quoting it in his opinion. The solution of the question presented by the contention made by the trustee is dependent upon the construction of section 60b. A preference under section 60a is not voidable, nor does it, under section 57g, as amended by the act of 1903, prevent the preferred creditor from proving his claim for any balance remaining due after exhausting the property transferred. It will be noted that section 57g, as originally enacted, precluded a creditor, who had received a preference as defined by section 60a, from proving his debt until he had surrendered the property transferred. Subsequent to, and by reason of, the decision in Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, Congress amended section 57g, so that only a preference

[1] 89 Fed. xi, 32 C. C. A. xxvii.

as defined by section 60b prevented the creditor from proving the balance of his debt without surrendering his preference.

[3] At no time did the Bankrupt Act of 1898 give to the trustee the right to recover property transferred within four months prior to proceedings in bankruptcy, unless the elements prescribed by section 60b were shown to exist. A preference, as defined by section 60a, is without any effect upon the right of the creditor, since the amendment of 1903 to section 57g. It would be a strange conclusion that a simple preference under section 60a entitled the trustee to recover the property transferred, when, under section 57g, as amended, he can prove his debt without surrendering the preference.

[4] We are thus brought to inquire whether, under the provisions of section 60b, the testimony before the referee entitles the trustee to recover the property transferred by the bankrupt on August 11, 1911; that is, does the testimony establish the allegation that the transfer constituted a voidable preference? Section 60b defines such a preference, so far as applicable to this case, as (1) a transfer of property, (2) within four months before the filing of the petition in bankruptcy, (3) by a person who is insolvent, (4) when the person to whom the transfer is made shall then have reasonable cause to believe that the enforcement of such transfer will effect a preference. When these essential elements are found in a transaction between a bankrupt and his creditor, it is provided that—

"it shall be voidable by the trustee and he may recover the property or its value."

For the definition of the word "preference," as used in section 60b, recourse must be had to section 60a. We there find that, in order that a transfer, etc., shall operate as a preference, within the meaning of the act, it must—

"enable the creditor, to whom the transfer is made. to obtain a greater percentage of his debt than any other such creditors of the same class."

Thus it is seen that section 60a defines a "preference," section 60b a "voidable preference," section 67c a "fraudulent preference," under the Bankrupt Act, and section 70e a "transfer of property," fraudulent under the state law. For the definition of a preference, which is declared to be an act of bankruptcy, see section 3. Without question, the evidence before the referee establishes a preference within the terms of section 60a, leaving in controversy the sole question whether it brings such preference within the terms of section 60b.

[5] The burden of proof is upon the trustee. Loveland on Bankruptcy (4th Ed.) § 544; Barbour v. Priest, 103 U. S. 293, 26 L. Ed. 478. Judge Sanford in Kimmerle v. Farr, 189 Fed. 295, 111 C. C. A. 27 (Sixth Circuit), says that the burden of proof is on the trustee in bankruptcy, seeking to avoid as a preference a transfer of property made by a bankrupt, to prove by sufficient evidence all of the essential elements of a voidable preference. The question discussed in that case, whether it is essential to show that the

creditor knew of the debtor's intention to create a preference, is eliminated by the amendment of 1910; the words inserted in section 60b by the amendment of 1903, "had reasonable cause to believe that it was intended thereby to give a preference," being stricken out. Loveland on Bankruptcy (4th Ed.) § 492.

Did Pennington, or his attorney, who drew and took the transfer, have reasonable cause to believe that the effect of the transfer would be to give a preference, as defined by section 60a? F. M. Carlile was the only witness examined before the referee. He says that, when Pennington was appointed receiver of the Bank of Tarboro, in June, 1911, the firm of F. M. & S. O. Carlile was overdrawn $1,263.78; that they owed the bank $700 by note, and another note of $1,000 secured by mortgage on real estate; that they executed the transfer to Pennington in the office of Mr. Gilliam, one of his attorneys, for notes and accounts amounting to about $1,050, and a promise to deliver in ten days thereafter $300 more; that at the time he executed the transfer he thought his firm was entirely solvent, and so represented to Mr. Gilliam; that he stated to Mr. Gilliam that they had $1,000 solvent accounts, $570 notes secured by mortgages, $1,700 cash account (about), $5,000 stock (about), $800 hearse and wagon (about), and at the same time represented that the liabilities of said firm, other than its indebtedness to the Bank of Tarboro, did not exceed $3,000; that at that time he had no idea that the firm would go into bankruptcy within four months from said date; that he assured Mr. Gilliam that, by giving them the extension, they would be able to liquidate all of the firm's obligations; that Mr. Pennington asked him about securing the overdraft—said he would grant the extension if the collaterals were put up. This is all that was said about it. He did not say that if they were not put up he would "push them for it." Their purpose in making the transfer was not to give the bank a preference, but to secure the overdraft. There is no evidence that Pennington had any information in regard to the financial condition of Carlile.

The only other evidence introduced was the schedule, filed by the bankrupts, October 14, 1911, from which it appears that they owed debts, secured, $5,305 (it appears that the property mortgaged was of sufficient value to pay these debts), and $5,627.04 unsecured debts. The schedules show stock valued at $4,000, notes secured by title retained to furniture purchased $1,300, notes for pianos, title retained, $670, hearse and wagon $515, and debts due on open accounts $1,500. It does not appear that either Mr. Pennington or Mr. Gilliam had any knowledge of, or information in regard to, the indebtedness of the firm, other than that due the bank, or any other knowledge or information in regard to the character, etc., of the property other than that given by bankrupts. Certainly, if they were justified in accepting that information—that is, if they had no good and sufficient reason to doubt the truth of it—there was nothing in the statement calculated to create a reasonable belief that the firm was insolvent; that is, that the bankrupts were

making false statements, and that, in accepting the transfer, they were receiving a preference.

The referee finds, I presume, from the account of the trustee, that he has not, after diligent effort, been able to realize more than $3,624 cash from the property. This finding, however, is of little probative value in ascertaining what information Mr. Pennington or his attorney had on the subject on August 11, 1911. There is no evidence in the record in respect to the moral character of the bankrupts, the manner in which they had been conducting business, or their commercial credit. Nor is there any evidence in regard to the extent or character of their dealings with the bank—whether their account was frequently overdrawn, or how long the overdraft had existed. There is nothing to indicate that the receiver had been, prior to his appointment, connected with the bank, or was acquainted with the relations existing between the bank and the bankrupts. It does not appear that the receiver did anything more than a prudent and faithful discharge of his duty demanded. While the overdraft was large for men of their worth, we may take notice of the fact that, for some reason, the bank went into the hands of the receiver in midsummer, at a season when, in this section, cash business is dull and money scarce. While prudent banking would suggest that customers be called upon to either cover the overdraft or give security, yet the mere fact that a customer of a bank, carrying a stock of $4,000, etc., has overdrawn for $1,263, would not, of itself, be calculated to create a reasonable apprehension of insolvency.

The correct rule is well stated by Mr. Justice Bradley in Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971, in which he says:

"Some confusion exists in the cases as to the meaning of the phrase 'having reasonable cause to believe such a person is insolvent.' Dicta are not wanting which assumes that it has the same meaning as if it had read 'having reasonable cause to suspect such person is insolvent.' But the two phrases are distinct in meaning and effect. It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debts. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further, he may feel anxious about his claim, and have a strong desire to secure it, and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances, is not prohibited by the law. * * * The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is, in fact, desperate, and his creditors, if they knew anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice."

In the language of Mr. Justice Bradley in the opinion cited, the evidence before the referee falls far short of establishing that the receiver had reasonable cause to believe that Carlile was insolvent at the time the transfer was executed. Mr. Collier, in his excellent work on Bankruptcy, at page 669, says:

"It has been held that it is not necessary for a creditor to know, or have reasonable cause to believe, that the debtor is insolvent when a mortgage or pledge is made within the four months period to secure an antecedent debt."

In support of this guarded statement the author cites In re Mills (D. C.) 162 Fed. 42, 20 Am. Bankr. Rep. 501. An examination of the "headnote" (No. 4) sustains the statement of Mr. Collier and the referee's conclusion in this case. An examination of the case, as reported, explains how the error found its way into the "headnote." The referee, in an elaborate report, finds as a fact that the creditor had, not only reasonable cause to believe that the debtor was insolvent, but that the officers of the trust company well knew that he was insolvent. On page 48 of 162 Fed. the referee says:

"The referee further holds that, when a mortgage or pledge is made to secure an antecedent debt, within four months of the filing of petition in bankruptcy against him, it is not necessary that the creditor should have reasonable cause to believe that the debtor was, then insolvent; a different rule applying to such a case from that which governs when there is an absolute payment of a pre-existing debt"—saying that the law is "directly so held by the Circuit Court of Appeals in this (the Fourth) circuit, in Farmers' Bank v. Carr, 127 Fed. 690 [62 C. C. A. 446]."

An examination of the case does not sustain the construction put upon it. It does not very clearly appear from the report how the question arose, but it is manifest, from Judge Simonton's opinion, that the conclusion reached by the court was based upon the fact that the preferred creditor had notice of such facts as should have created a reasonable belief of the debtor's insolvency. It will be found that the cases cited by the referee (McNair v. McIntyre, 113 Fed. 113, 51 C. C. A. 89; In re Hill [D. C.] 140 Fed. 984; In re Pease [D. C.] 129 Fed. 446) do not sustain his conclusion. So much of the report (page 48) as discusses this question is entirely unnecessary and surplusage, because he had found the fact of actual notice of insolvency upon which the ultimate conclusion was based. It will be noted that, when the report came before Judge Purnell, District Judge, he wrote no opinion, simply stating that "the findings of fact are supported by ample proof" and "are in all respects confirmed." It is true that he also says that the conclusions of law are also confirmed; but a reasonable construction of the last words used by the judge restricts the conclusion of law to such as are applicable to the findings of fact. The case, as thus explained, is in harmony with the uniform current of authority and the manifest meaning of the statute.

I have deemed it proper to make this reference to the error into which one, following the "headnote" and the language of the referee in that case, may be led because of the fact that the case is

from this district. In view of the fact that the parties have submitted to the jurisdiction, and by their actions waived all questions of regularity of procedure, I have discussed and decided the questions presented, thus saving time and expense in the final settlement of the estate. The error into which the referee fell is the result of supposing that the case was governed by section 60a, instead of section 60b. He does not find, because in his view of the law it was not material to inquire, whether the receiver or his attorney had a reasonable ground to believe that Carlile was insolvent. I am of the opinion that he was correct in finding that the transfer operated as a preference as defined by section 60a, but was in error in holding that this entitled the trustee to recover the property. I am further of the opinion that the evidence does not establish a voidable preference within the definition of section 60b. There is no suggestion that the transfer was void under section 67e. The trustee, therefore, is not entitled to recover the property in controversy.

The order of the referee is reversed.