A. NEWMAN, Trustee of the Estate of A. A. CUR-
TIS, Bankrupt, Appellant, v. TOOTLE-CAMP-
BELL DRY GOODS COMPANY, Respondent.

Kansas City Court of Appeals, November 17, 1913.

1. BANKRUPTCY: Preferred Creditors: Voidable Preference.
In order for the trustee of a bankrupt to recover the amount
of a voidable preference of creditors four elemental facts must
combine. First, the insolvency of the debtor at the time of the
preference; second, the giving of the preference within four
months of the petition in bankruptcy; third, the effect of
securing to the favored creditor a greater percentage of his
debt than other creditors of the same class may obtain from
the estate of the debtor; and fourth, that the preferred cred-
itor, when he received the preference knew or had reasonable
cause to believe that it was the purpose of his debtor to give
him a preference over the creditors of the same class.

2. ———: ———: Natural Presumptions. When a debtor pays
and a creditor receives the amount of a just debt, the natural
presumptions are in favor of the good faith of the transaction.
Merchants and other business men constantly continue to make
payments up to the very eve of failure, and it would be dis-
astrous to have them set aside on slight proof or mere suspic-
ion.

3. ———: ———: Knowledge of Creditor. The creditor is not
to be charged with knowledge of his debtor's financial condi-
tion from mere suspicion in his mind of possible insolvency,
nor is it essential that the creditor should have actual knowl-
edge of or believe in his debtor's insolvency, but he should have
reasonable cause to believe his debtor to be insolvent. If
facts and circumstances, with respect to the debtor's financial
condition, are brought home to him, such as would put an
ordinary prudent man upon inquiry, the creditor is chargeable
with knowledge of the facts which such inquiry should reason-
ably be expected to disclose.

4. DEFINITIONS: Insolvency. By insolvency, with reference to
a person, is meant not one who "was unable to pay his debts
as they become due in the ordinary course of his daily trans-
actions" but one whose property "shall not at a fair valua-
tion, be sufficient in amount to pay his debts."

Appeal from Buchanan Circuit Court.—*Hon. Chas. H.
Mayer*, Judge.

AFFIRMED.

*McClintock & Quant* and *Spencer & Landis* for appellant.

*Robert A. Brown* for respondent.

JOHNSON, J.—Plaintiff, trustee of A. A. Curtis an involuntary bankrupt, sued to recover the amount of a voidable preference which defendant, a creditor of Curtis, is alleged to have received within four months of the filing of the petition in bankruptcy. The answer is a general denial. The jury returned a verdict for defendant and the case is here on the appeal of plaintiff.

Defendant is a wholesale merchant doing business in St. Joseph and Curtis, who was a retail merchant at Agra, Kansas, a town two hundred and fifty miles west of St. Joseph, was a customer of defendant. In March, 1911, Curtis was indebted to defendant on an open account and on notes given in settlement of a past due account in an amount approximating $1800. In the preceding month an agent of defendant had called on Curtis and obtained from him a written statement of his financial condition which showed that he not only was solvent but was in good financial condition and entitled to further credit. After receiving this statement defendant accepted and filled an order from Curtis amounting to about $600 but Curtis sold his business before the delivery of the goods and they were returned to defendant. The sale to which we have just referred occurred about March 20, 1911, and the first notice defendant received of it came from a mercantile agency. Defendant immediately sent an adjuster to Agra who was informed by Curtis that he had sold his business, had been paid the larger part of the purchase price and had paid all his debts except that to defendant. The adjuster testified that Curtis

stated "I have settled with everyone except the Tootle-Campbell Dry Goods Company and was going to get to them to-day." The adjuster learned that Curtis still held a note of $600 given him in part payment of the purchase price of the business and a claim of $912 against a physician for an automobile Curtis had sold the physician and that both of these demands were good. Further Curtis declared that he had accounts receivable from which he expected to collect more than enough to enable him to discharge his obligations to defendant. He proposed to give the adjuster his check for $900 dated ahead a week and to pay the remainder of defendant's claim from the proceeds of collections. The adjuster referred this proposal to the credit man in a telegram in which he said: "Things look badly here. Whittinghill (referring to the agent who had procured the financial statement from Curtis) should have made a different report. Stock invoiced about five thousand; party paid thirty-five hundred cash and note for six months for stock. Believe Curtis has paid nearly everyone but us the thirty-five hundred checked out; about one thousand of it on a deal he will turn April first, notes from collections he insists he will get within two weeks; has about twelve hundred out considered good. . . . Banker thinks Curtis will do as above if I accept this settlement. Shall I take check and notes or open accounts? Wire instructions soon as possible."

This telegram was sent March 24, 1911, and was answered by the credit man the same day in the following telegram: "You may allow until April 1st for party to meet his entire account if he secures you absolutely. Accept no checks unless certified. Checks may be post-dated if secured, but no future settlement even on short time will be accepted unless absolutely good security given for entire account. Debtor has preferred other creditors and we would prefer to throw the estate into bankruptcy rather than submit

to extensions unless unquestionably good security given. See party again and wire result. Stay on ground until something done."

Subsequent telegrams passed between the adjuster at Agra and the credit man at St. Joseph but it is not necessary to refer to their contents since they disclose nothing further relating to the knowledge the adjuster had acquired of Curtis's true financial condition at the time he made the settlement in controversy. After much negotiation and some sharp verbal controversy the adjuster finally induced Curtis to assign to defendant the note of $600 given by the purchaser of the business and the account of $912 against the physician, and the adjuster agreed that the remainder of the debt should be paid by Curtis out of the proceeds of future collections of his accounts receivable which, it appears, the adjuster believed amounted to $1200 of collectible accounts. Defendant realized $1495.15 from the assigned note and account and it is this sum plaintiff is attempting to recover in this action. It turned out that the accounts receivable, from which Curtis promised to pay the remainder of defendant's debt, did not amount to much more than $300, and that they were worthless. Further it became known to defendant, but not until after the payment in question had been received, that Curtis had not paid all his other creditors but owed unsatisfied debts amounting in all to about $1400. While at Agra and during the negotiations leading to the settlement, the adjuster made inquiries of the banker with whom Curtis had been doing business and learned from him that Curtis had paid out to creditors all of the cash received from his vendee, and the banker expressed the belief that he owed no other debts. In depositions taken and introduced by plaintiff, facts and circumstances are related by witnesses which tend to show that the adjuster, before he received the payment, had knowledge of the fact, now conceded, of the insolvency of

Curtis, but this evidence is contradicted by the adjuster and we think by the testimony of Curtis. After making the settlement, the adjuster left Agra to attend to other business but returned on March 28th and on that date wrote two letters to the credit man in which he said: "Curtis has left nothing we can get; practically all his accounts collected. Think we are extremely fortunate under circumstances securing note, merchandise and order only thing saved us. . . . Curtis has skipped out owing several local bills, owes a widow here five dollars on house rent. It seems now that he was both a liar and a crook, just what I told him he was before I got through with him."

Counsel for plaintiff attack a number of the rulings of the court on instructions and on the admission of evidence, but in what we shall say on the point that the verdict and judgment are unsupported by any substantial evidence we shall answer the principal objections to the rulings on the instructions. Those addressed to the rulings on evidence have been carefully examined and are found to be without merit. It is contended that the evidence indisputably shows that by accepting the payment in question defendant obtained a voidable preference as that term is understood in the bankruptcy law which recognizes two kinds of preferences—those which a creditor acting in good faith may accept and retain, and those which are forbidden and may be avoided at the suit of the trustee of the bankrupt.

Four elemental facts must combine to render a preference voidable, viz.: First, the insolvency of the debtor at the time of the preference and by insolvency, as that and equivalent words are defined in the existing law, reference is made not to a person who "was unable to pay his debts as they became due in the ordinary course of his daily transactions" but one whose property "shall not, at a fair valuation, be sufficient in

amount to pay his debts.'' [In re Louis A. Eggert, 3 Am. Bankruptcy Reports, 541.] Second, the giving of the preference within four months of the petition in bankruptcy. Third, the effect of securing to the favored creditor a greater percentage of his debt than other creditors of the same class may obtain from the estate of the debtor, and, fourth, that the preferred creditor, when he received the preference, knew or had reasonable cause to believe that it was the purpose of his debtor to give him a preference over other creditors of the same class. [See Gill v. Safe Co., 170 Mo. App. l. c. 485.]

The presence of the first three of these elements in the transaction under consideration must be conceded. The payment to defendant was made within four months of the filing of the petition in bankruptcy. Curtis was insolvent at that time, since it clearly appears that his assets, at a fair valuation, were insufficient to pay his debts and the effect of the payment to defendant was to give it a larger percentage of its debt than other creditors of the same class will obtain from the estate of the bankrupt which appears to be of no value. And the further concession must be made that Curtis, when he assigned to defendant the purchase price note and the account for the automobile had knowledge of the fact of his insolvency and intended to give defendant a preference forbidden by law. Consequently the case is reduced to a single question, i. e., Do the facts and circumstances in evidence, about which there is no dispute, indisputably show that defendant, when it received the preference had actual or constructive knowledge of facts which, plus such knowledge, would make the preference voidable?

Judicial expressions on the subject of what will and what will not constitute constructive knowledge emphasize the distinction between notice of facts and circumstances which would incite a man of ordinary prudence to an inquiry under similar circumstances,

and notice of circumstances that would merely excite suspicion. The former is equivalent to notice of all the facts which a reasonably diligent inquiry would disclose   (Coder v. McPherson, 152 Fed. Rep. 951), while the latter is deemed insufficient to constitute reasonable cause to believe that a preference is intended and will not put the creditor upon inquiry. It is said in Tumlin v. Bryan, 165 Fed. Rep. 166:

"When a debtor pays, and a creditor receives, the amount of a just debt, the natural presumptions are in favor of the good faith of the transaction. To let the mere fact of the bankruptcy of the debtor within four months make the transaction involved voidable would be to create uncertainty and uneasiness as to the probable result of every settlement between debtor and creditor. Reasonable cause to believe that a preference was intended cannot be held to be proved by circumstances that would merely excite suspicion. And circumstances may seem suspicious after the bankruptcy occurs that would not appear unusual at the time of their occurrence, and would then have presented no 'reasonable cause' on which to found a belief of intended preference. Merchants and other business men constantly continue to make payments up to the very eve of failure, and it would be disastrous to have them set aside on slight proof or mere suspicion. [Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; Stucky v. Masonic Savings Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640.]"

And in In re Eggert, 102 Fed. Rep. 735, the rule thus is stated:

"The resultant of all these decisions we take to be this: That the creditor is not to be charged with knowledge of his debtor's financial condition from mere suspicion in his mind of possible insolvency; that it is not essential that the creditor should have actual knowledge of, or believe in, his debtor's insolvency, but that he should have reasonable cause to be-

lieve his debtor to be insolvent; that if facts and circumstances with respect to the debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the debtor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose."

Turning to the circumstances in evidence, we find nothing in them to contradict the testimony of the credit man to the effect that when he received the information that Curtis had sold out, he believed, and had cause to believe, that Curtis was solvent. He had before him a recent, written statement from Curtis which showed his net worth to be over $5,000 and on the strength of that statement had just shipped a large quantity of goods to him on credit. Actions speak louder than words and it would be impossible to think that defendant would have been willing to send goods of such value to a merchant of whose solvency it had even a doubt or suspicion. Nor was there anything in the fact that Curtis had sold out without notice to his largest creditor to arouse more than a suspicion or to cause defendant to take any other step than that of sending out an agent to obtain a satisfactory settlement of its claim. It is quite an ordinary occurrence for an honest and solvent merchant to sell his business and it is usual for creditors to regard and treat such an act as calling upon him for the immediate payment of his debts. Diligence of a creditor in such case cannot be construed as evidence of a belief or even of a suspicion that his debtor might be insolvent. The only thing that the credit man knew was that a customer he believed to be solvent had sold out and that a satisfactory settlement of his indebtedness was in order and should be effected with usual business celerity.

The inference is reasonable and in fact very strong that the adjuster made the settlement in ignorance of the fact of Curtis's insolvency and that he pur-

sued the usual course of investigation and inquiry. He made inquiries of Curtis, the banker, the purchaser and others, and what he heard from these various sources tended to corroborate the statement of Curtis that he had paid his other debts and had remaining available assets amounting to almost one thousand dollars in excess of his liabilities to defendant. Should we say, as a matter of law, that he should have made other investigations and inquiries? We think not, and hold that the question of whether or not he received notice of circumstances that would have incited a man of ordinary prudence to further inquiry is shown by all the evidence to involve an issue of fact for the jury to solve. There is nothing in the telegram he sent the credit man on March 24th to accuse him of bad faith. His statement that ''things look badly here'' when read in the light of its context does not convey the idea that the fact of insolvency had been discovered. The statements following distinctly negative that idea in the assertions that Curtis had paid his other debts and had property enough to satisfy defendant's claim. If Curtis had no other creditors, he could not, whether solvent or insolvent, make a transfer of property to pay or secure defendant's demand that would be illegal or voidable under the Bankrupt Act. We must assume that the adjuster endeavored to report the facts to his superior as he understood them, and it is manifest that at the time he wrote that message he had no thought of attempting to secure a voidable preference and had no notice of facts and circumstances that would impugn the verity of the facts he reported.

Much stress is laid by plaintiff on the threat in the credit man's reply telegram that he would throw the estate into bankruptcy. The only source of recent information respecting the affairs of Curtis the credit man possessed was the adjuster who had just informed him of facts which would give no ground for the

belief that Curtis had committed acts of bankruptcy. The jury were entitled to infer that the threat proceeded not from knowledge of facts that would put a prudent man on inquiry, but from a purpose to give the adjuster a weapon with which to intimidate Curtis into making a more satisfactory settlement than he had proposed.

The assertion in the letters written by the adjuster two or three days after the settlement to which we have referred tend to support rather than to contradict the view that the preference was accepted in good faith. It appears that the adjuster was still ignorant of the fact that Curtis owed other wholesale merchants since he only mentions some unpaid local debts of trifling amounts. He does not say, as plaintiff appears to think, that his alleged conversations with Curtis, in which he impugned his honesty, occurred before the preference was given, and if he had, the inference would be reasonable that the imputation referred to the conduct of Curtis in paying his other creditors in full out of the purchase price of the stock and then refusing to make a satisfactory settlement with defendant, his heaviest creditor.

A careful analysis of all the evidence (a more extended review of which would serve no useful purpose) convinces us that the court properly took the view that the case involved issues for the jury to determine. We find no error in the instructions, the case was fairly tried and submitted and the judgment must be affirmed. It is so ordered. All concur.