Union Guardian Trust Company, Trustee in Bankruptcy of Standard Tube and Manufacturing Company, Appellant, v. Wallace Supplies Manufacturing Company, Appellee.

Gen. No. 37,354.

Opinion filed June 11, 1934.

POPPENHUSEN, JOHNSTON, THOMPSON & COLE, for appellant; HENRY G. O'DONNELL and JAMES W. COFFEY, of counsel.

SIMON T. SUTTON, for appellee; HARRY A. GOLDSMITH, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by the plaintiff trustee from a judgment for defendant entered upon the verdict of a jury after plaintiff's motion for a new trial and for a judgment *non obstante veredicto* had been denied and overruled. The statement of claim disclosed a cause of action to recover from defendant money paid to it by the Standard Tube & Manufacturing Co. (now adjudged a bankrupt) under circumstances alleged to constitute a preference contrary to the provisions of the Bankruptcy Act of July 1, 1898, chap. 541, 30 Stat. L. 544. There is practically no dispute as to the material facts.

An involuntary petition to have the Standard Tube & Manufacturing Co. declared a bankrupt was filed by certain of its creditors on October 24, 1930, in the District Court of the United States for the Eastern District of Michigan, Southern Division. The Standard Tube & Manufacturing Co. was a corporation organized under the laws of the State of Michigan, its principal place of business being in Detroit. The alleged bankrupt appeared and answered, and March 5, 1931, was upon a hearing upon petition and answer duly adjudged to be a bankrupt.

Prior to the time of filing the petition against the bankrupt, Mr. Adams, representing the petitioning creditors, conferred with Mr. Kenney, a solicitor for defendant, who was also a creditor and both conferred with the solicitor and representatives of the bankrupt. During these negotiations an attempt was made to work out some plan of reorganization of the Standard Co. It was developed at these conferences that Mr. Healy, president of the bankrupt, had taken from it a junior or third mortgage covering all its property in order to protect an advancement which had been made by him. Mr. Adams represented creditors with claims aggregating approximately $50,000. The claim of defendant amounted to $4,394.40. The first of these conferences between Mr. Adams and Mr. Kenney took place on October 13, 1930, and there were several conferences thereafter. They had before them a copy of the balance sheet of the corporation and examined it, and the testimony of Adams is to the effect that Kenney concurred with him in the opinion that the debtor was in fact bankrupt, and that its assets were not sufficient to cover its liabilities. Adams testified that Kenney stated that he desired to get in touch with his client before joining in the presentation of the petition in the bankruptcy court.

On the contrary Mr. Kenney says that the balance sheet showed on its face that the debtor was in fact in a solvent condition and that his own feeling was that a petition would be contested; that after consultation with his client he informed Adams that he would not join in an involuntary petition; that he did not at that time believe that the debtor was insolvent; and that he so reported to his client. The evidence was taken by deposition, and Kenney refused to exhibit the letter to his client so stating, claiming the same was a privileged communication. Time became an important element in the negotiations, if the mortgage made by the debtor to its president, Healy, was to be set aside.

October 23, 1930, the day before the filing of the petition in the bankruptcy court, defendant began suit on its claim in the circuit court in Michigan and at the same time instituted garnishment proceedings against the First National Bank, the Ford Motor Company and the Chevrolet Motor Company. The bank was served October 23, 1930, the other garnishees on October 24th.

Thereafter the attorney for the bankrupt informed attorneys for defendant that the garnishment had succeeded in tying up about $4,000 of claims due to the debtor. The claim of defendant against the bankrupt was represented by promissory notes, and the bankrupt debtor has never suggested that there was a valid defense to the suit. However, on November 8th thereafter, defendant reached an agreement with the bankrupt with reference to these garnishment suits. The garnishees were by stipulation released, and on November 14, 1930, the bankrupt debtor gave its check to the attorneys for defendant for $1,678.20, and the suit against the bankrupt was dismissed.

When this settlement was made and when defendant received this money attorneys for defendant knew that the petition in bankruptcy had been filed and was pending and that an answer to it had also been filed.

Mr. Bulger, who was familiar with the bankrupt estate, testified that the total claims filed against the bankrupt amounted to $93,962.61; that the assets of the bankrupt had been liquidated with the exception of an acetylene generator, which was appraised at $400; that there was a balance on hand of $3,963.91, of which $1,569.21 was available, the balance being frozen in a bank which was in the hands of a conservator. No dividends have been paid to the general creditors, and no costs of administration, including attorneys, receivers, and trustees' fees, have been paid.

Defendant cites authorities to the propositions that the presumption of law is that payments claimed to be preferences are legal, and that the burden of proof is upon the trustee to overcome this presumption (Collier on Bankruptcy, 13 ed., vol. 2, p. 1328; *In re F. M. & S. Q. Carlile,* 199 Fed. 612; *In re Gaylord,* 225 Fed. 234; *Hewitt v. Boston Strawboard Co.,* 214 Mass. 260); that proof must be made of the insolvency at the time the payment was made (Collier on Bankruptcy, vol. 2, p. 1295, and cases there cited); that in such suit the trustee must establish by a preponderance of the evidence the fact of preference at the time payment was made to him (*Grant v. Monmouth First Nat. Bank,* 97 U. S. 80; *Newman v. Tootle-Campbell Dry Goods Co.,* 174 Mo. App. 528); further, that the elements giving rise to the right of a trustee to set aside a preference raised questions of fact which are for the jury upon all the evidence. *Ridge Ave. Bank v. Studheim,* 145 Fed. 798; *In re Chicago Car Equipment Co.,* 211 Fed. 638; *Kaufman v. Tredway,* 195 U. S. 271.

The law as announced in the foregoing decisions is unquestioned but cannot avail as against the undisputed facts here appearing that defendant received this money from the bankrupt three weeks after the involuntary petition in bankruptcy had been filed and that, as is admitted, it received the same with full knowledge of all these facts. The argument of defendant ignores the well established rule of law which must control here, namely, that the adjudication of bankruptcy under circumstances such as here appear casts upon defendant the burden of proving that the bankrupt was solvent when the payment was made. *In re Star Spring Bed Co.,* 265 Fed. 133. In that case the court said:

"The Star Company was insolvent on the 19th day of April, 1911. This is settled by the order of adjudi-

cation upon a petition filed on that day. The transfer of the book accounts to the bank was consummated about 6 o'clock in the afternoon of the preceding day. While we are not forgetful of the general rule that no presumption of insolvency at a date prior to that of filing the petition in bankruptcy arises from the adjudication (*In re Rome Planing Mill* [D. C.] 96 Fed. 812), yet we think reason demands, and this rule does not, when insolvency is shown on one day, forbid, in the absence of countervailing evidence, a presumption that such condition existed at the close of the preceding day. No evidence having been offered in this case to rebut that presumption, we must find, as did the referee and the District Court, that the Star Company was insolvent at the time of the assignment of its accounts receivable to the bank.''

That any other rule would invite the dissipation of assets of bankrupts is apparent. Although the burden of proof was thus cast upon defendant it offered no evidence on that issue, and there is none in the record from which the jury could reasonably find for defendant thereon.

Plaintiff also contends that the court erred in admitting opinion evidence as to the solvency of the bankrupt, citing *People v. Paisley*, 288 Ill. 310. The contention is plausible, but the points already considered are controlling and make unnecessary any discussion of other points. We are of the opinion upon the uncontradicted evidence as a matter of law that plaintiff was entitled to recover, and plaintiff's request at the close of all the evidence for a directed verdict should have been granted.

For the reasons indicated the judgment is reversed with a finding of facts and judgment here in favor of plaintiff and against defendant in the sum of $1,678.20, with interest at five per cent from November 14, 1930,

to the date upon which this judgment is entered, amounting to $299.98, making a total of $1,978.18.

*Reversed with finding of facts and judgment here.*

O'CONNOR and McSURELY, JJ., concur.

Finding of facts: We find as facts that on November 14, 1930, defendant Wallace Supplies Manufacturing Company through its attorneys received from the bankrupt, Standard Tube & Manufacturing Company, a payment in the sum of $1,678.20, which constituted an unlawful preference and was made in violation of the Bankruptcy Act of July 1, 1898, chap. 541, 30 Stat. L. 544; that plaintiff trustee is entitled to recover from defendant the sum of $1,678.20, with interest at five per cent from November 14, 1930, to the date of the entry of this judgment, amounting to $299.98, making a total of $1,978.18.